Hillsborough-northern judicial district
No. 95-763

## BAYBANK

v.

## CATAMOUNT CONSTRUCTION, INC. & a.

April 24, 1997

*Peabody & Brown*, of Manchester (*Kevin M. Fitzgerald* and *John P. Beals* on the brief, and *Mr. Fitzgerald* orally), for the plaintiff.

*Thomas, Utell, Van De Water & Raiche*, of Manchester, and *Douglas, Robinson, Leonard & Garvey, P.C.*, of Concord (*Marc L. Van De Water* and *Charles Douglas, III* on the brief, and *Mr. Van De Water* orally), for the defendants.

JOHNSON, J. The defendants, Catamount Construction, Inc., Sunset Construction Co., Eugene R. Connor, M. Patricia Connor, John H. Connor, and Marilyn A. Connor, appeal an order of the Superior Court (*Perkins*, J.) granting plaintiff Baybank a charging order and other relief against two of the defendants' interests in a limited partnership. We affirm in part, reverse in part, vacate in part, and remand.

Baybank obtained a judgment in superior court against defendants Eugene and John Connor (the Connors) as guarantors on a promissory note made by defendant Catamount Construction, Inc. In an effort to satisfy its judgment, Baybank sought to reach the Connors' interests in East Street Associates Limited Partnership (East Street), in which the Connors are limited partners. Baybank requested a charging order against the Connors' interests in East Street, the appointment of a receiver for any monies due the Connors as limited partners in East Street, and, if the judgment was not satisfied within fourteen days, dissolution of East Street. The Connors responded by conceding that Baybank would be entitled to a charging order under RSA chapter 304-B, but objecting to the additional relief sought. The superior court granted Baybank a charging order and further ordered that "East Street Limited Partnership be dissolved and a receiver appointed to dispose of [the Connors'] interest in the limited partnership to satisfy the judgment debt."

On appeal, the defendants challenge the trial court's authority to order the additional relief, particularly the dissolution of East Street. Specifically, the defendants contend that the trial court erred in importing creditors' rights and remedies found in RSA

chapter 304-A, the Uniform Partnership Act (UPA), into RSA chapter 304-B, the Uniform Limited Partnership Act (ULPA).

The trial court ruled that it had broad equitable power to grant the additional relief under RSA 304-A:28, I, which provides:

> On due application to a superior court by any judgment creditor of a partner, the court may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon; and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect to the partnership, and make all other orders, functions, accounts and inquiries which the circumstances of the case may require.

RSA 304-A:28, I (1995). Citing RSA 304-A:6, which states that the UPA "shall apply to limited partnerships except insofar as the statutes relating to such partnerships are inconsistent herewith," the trial court concluded that it should apply the UPA to East Street to the extent that the UPA did not conflict with the ULPA. RSA 304-A:6, II (1995). Finding no conflict between RSA 304-A:28 and anything in the ULPA, the court applied the UPA provision to East Street.

In addition, the trial court based its order of dissolution on RSA 304-A:32, II(b), which provides:

> The court shall decree a dissolution on the application of the purchaser of a partner's interest under RSA 304-A:27 or RSA 304-A:28:
>
> . . . .
>
> (b) At any time if the partnership was a partnership at will when the interest was assigned or when the charging order was issued.

RSA 304-A:32, II(b) (1995). Again, the court found that this section did not conflict with anything in RSA chapter 304-B and was therefore applicable to East Street.

The defendants urge us to hold that the rights of judgment creditors of limited partners are limited to those set forth in RSA chapter 304-B, and that it was error for the trial court to import *any* of the remedial provisions of RSA chapter 304-A into RSA chapter 304-B. We decline to adopt this position as we are persuaded by the weight of authority from other jurisdictions and scholarly commentary that the legislature did not intend to preclude a creditor with a charging order on a limited partnership interest from enforcing that interest if necessary. We are also convinced, however, that the

legislature did not intend such a creditor to have the remedies ordered by the trial court.

■ The statutory remedy of a charging order was designed to prevent the personal creditors of a limited partner from disrupting the partnership business by seizing partnership assets on execution. *See, e.g., Centurion Corp. v. Crocker Nat. Bank*, 255 Cal. Rptr. 794, 796-97 (Ct. App. 1989) (judgment creditor of a limited partner); *cf. Taylor v. S & M Lamp Co.*, 12 Cal. Rptr. 323, 328 (Dist. Ct. App. 1961) (addressing the history of the charging order remedy in the context of a general partnership). The statutory remedy forces a judgment creditor to look solely to the debtor's partnership interest, which the ULPA defines as "a partner's share of the profits and losses of a limited partnership and the right to receive distributions of partnership assets," RSA 304-B:1, X (1995), rather than to partnership assets, to satisfy a partner's personal debt. "In effect, the charging order leaves the partnership intact but diverts to the judgment creditor the stream of profits that would otherwise flow to the debtor partner." Weinberger, *Making Partners Pay Child Support: The Charging Order at 100*, 27 HOUS. L. REV. 297, 302 (1990).

The defendants conceded that their interests in East Street could have been charged under RSA chapter 304-B. *See* RSA 304-B:41 (1995). We therefore affirm the portion of the trial court's order that charged the Connors' interests in East Street. The question before us is whether the additional remedies, particularly dissolution, ordered by the trial court are available to a creditor of a limited partner. As noted above, the UPA provides that it "shall apply to limited partnerships except insofar as the statutes relating to such partnerships are inconsistent herewith." RSA 304-A:6, II. The ULPA provides that "[i]n any case not provided for in this chapter the provisions of the Uniform Partnership Act, RSA 304-A, shall govern." RSA 304-B:63 (1995). Although the parties disagree on whether the later-enacted RSA 304-B:63 applies to the exclusion of RSA 304-A:6, we find it unnecessary to decide this issue since we would arrive at our holding in this case regardless of which provision we applied.

We first address the defendants' contention that the appointment of a receiver and sale of a charged partnership interest are unauthorized under the charging order provision of the ULPA. That section, entitled "Rights of Creditor," provides:

> On application to a court of competent jurisdiction by any judgment creditor of a partner, the court may charge the partnership interest of the partner with payment of the

unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the partnership interest. This chapter does not deprive any partner of the benefit of any exemption laws applicable to his partnership interest.

RSA 304-B:41. As observed by the court in *Madison Hills Ltd. v. Madison Hills, Inc.*, 644 A.2d 363, 367 (Conn. App. Ct.), *cert. denied*, 648 A.2d 153 (Conn. 1994), this section does not provide a method for enforcing the charging order. The significance of this omission becomes apparent in a case such as that before us, in which Baybank alleges that a charging order alone would never divert enough money to Baybank to satisfy even the accruing interest on the judgment debt. It is in precisely such situations that courts have been most inclined to enforce the creditor's rights through foreclosure on the charged interest. *See Centurion Corp.*, 255 Cal. Rptr. at 798. We therefore find that RSA 304-B:41 does not "provide[] for," within the meaning of RSA 304-B:63, a case such as this, and that the legislature intended that reference be made to the UPA for the means of enforcing the creditor's rights in the charged partnership interest. *See Madison Hills*, 644 A.2d at 368 (finding that where only the UPA, and not the ULPA, provides means of enforcing a charging order, the charging order provision of the ULPA "relies on rather than conflicts with" the UPA provision).

■ We also find that RSA 304-B:41 is not inconsistent with the remedial provisions of RSA 304-A:28, since, as the *Madison Hills* court noted, "the purpose of the charging order provisions under both statutes is to balance the need to protect the orderly operation of the partnership and the rights of creditors." *Id.* at 368-69. In most cases, neither the appointment of a receiver to collect the debtor partner's share of distributed profits, nor the sale of the debtor partner's interest in the partnership, as opposed to partnership assets, would unduly interfere with the running of the partnership business. *See Hellman v. Anderson*, 284 Cal. Rptr. 830, 837-38 (Ct. App. 1991) (making a similar observation in regard to general partnerships). Thus, we hold that a court may properly look to RSA 304-A:28 for the means to enforce a charging order under RSA 304-B:41 when the latter remedy alone would be insufficient. *See Madison Hills*, 644 A.2d at 368 (finding that "the remedy provisions of the UPA are available to judgment creditors under the ULPA"). *But see In re Stocks*, 110 B.R. 65, 67 (Bankr. N.D. Fla. 1989) (finding no right under Florida ULPA to foreclose on charged limited partnership interest).

The trial court, however, did not actually grant the type of relief contemplated by RSA 304-A:28. Although the trial court purported to order the appointment of a receiver "to dispose of the guarantors' interest in the limited partnership to satisfy the judgment debt," such relief would have been unnecessary in light of the trial court's order that the partnership be dissolved. In fact, it appears that the receiver and court-ordered sale were not intended to be in aid of the charging order but in aid of dissolution.

■ A review of the transcript of the hearing on Baybank's motion reveals that what was really at issue was Baybank's attempt to liquidate the primary asset of the limited partnership, a piece of real estate located in Tewksbury, Massachusetts, and satisfy its judgment out of the proceeds thereof. At one point, counsel for Baybank stated,

> the basic process that we're asking the court to do is to award the charging order for the judgment amount which is what the defendants confessed that we're entitled to, but then to go the next step which is to order — to make sufficient findings to order that a judicial dissolution of this partnership, given its history, given its stated purpose under oath, given its ultimate frustration of that purpose, to dissolve that partnership, *to allow the underlying property or the interest in the partnership and then the underlying property to be sold so that the cash gets freed up*, the debt gets paid so the interest ticker now does not outstrip the income that can be earned from the partnership . . . .

(Emphasis added.) Such an application of partnership property to pay the personal debts of a partner, however, is precisely what the charging order provisions of the ULPA and the UPA are intended to prevent. Neither the ULPA nor the UPA charging order provision allows a creditor such as Baybank to satisfy its judgment out of partnership assets. *See, e.g., Bohonus v. Amerco*, 602 P.2d 469, 471 (Ariz. 1979); *Evans v. Galardi*, 546 P.2d 313, 319 (Cal. 1976); *FDIC v. Birchwood Builders*, 573 A.2d 182, 186 (N.J. Super. Ct. App. Div.), *cert. denied*, 585 A.2d 337 (N.J. 1990).

■ Nor is Baybank entitled to the dissolution of East Street. The trial court erred by ordering dissolution under RSA 304-A:32, II(b). First, that provision allows the court to order dissolution "on the application of the purchaser of a partner's interest under RSA 304-A:27 or RSA 304-A:28." RSA 304-A:32, II. Baybank is not such a purchaser, however, because the defendants' partnership interests were never foreclosed upon. Baybank is merely a creditor with a

charging order on the defendants' limited partnership interests and, as such, is not entitled under the terms of RSA 304-A:32, II, to petition for dissolution of East Street.

Moreover, on the issue of judicial dissolution, the ULPA is neither silent nor consistent with the UPA, which leaves no occasion to import the provisions of RSA 304-A:32 into RSA chapter 304-B. Judicial dissolution of a limited partnership is provided for in RSA 304-B:45, which states that "[o]n application by or for a partner, the superior court may decree dissolution of a limited partnership whenever it is not reasonably practicable to carry on the business in conformity with the partnership agreement." RSA 304-B:45 (1995). Thus, the availability of judicial dissolution under the terms of the ULPA is much more limited than under the UPA. *Cf.* RSA 304-A:32 (1995). Limited recourse to judicial dissolution for limited partnerships reflects basic structural differences between the two types of entities. *See* A. BROMBERG, CRANE AND BROMBERG ON PARTNERSHIP § 90B(a), at 516 (1968) (noting that there are differences between dissolution of general and limited partnerships and finding it "not surprising that in some aspects of continuity, limited partnerships resemble corporations more closely than they do general partnerships"). In short, the ULPA is inconsistent with the UPA on this issue, and the trial court therefore erred in applying the UPA.

Baybank argues that even if the superior court erred in basing its order of dissolution on RSA 304-A:32, II(b), the same result could have been reached under either RSA 304-B:45 or RSA 304-A:32, I(f), which provides that a court may order dissolution on application by or for a partner when "[o]ther circumstances render a dissolution equitable." Thus, Baybank urges us to affirm the trial court's order on the ground that a correct result reached on mistaken grounds should be sustained if there are valid alternative grounds to support it. *See, e.g., Quinlan v. City of Dover,* 136 N.H. 226, 230, 614 A.2d 1057, 1059 (1992). We conclude, however, that dissolution was not authorized under either RSA 304-B:45 or RSA 304-A:32, I.

First, as with RSA 304-A:32, II, we find no occasion to import the provisions of RSA 304-A:32, I, into the ULPA, which speaks plainly and comprehensively on the issue of dissolution of a limited partnership. As for RSA 304-B:45, it requires that a petition for dissolution be made "by or for a partner." RSA 304-B:45. Baybank, as a judgment creditor, lacked standing to seek judicial dissolution under this section. As a creditor holding a charging order, Baybank has, to the extent of the interest charged, "only the rights of an assignee of the partnership interest." RSA 304-B:41. Under RSA

304-B:40, "[a]n assignment of a partnership interest does not . . . entitle the assignee to become *or to exercise any rights of* a partner." RSA 304-B:40 (1995) (emphasis added). This explicit statutory limitation on the rights of assignees precludes Baybank from acting "by or for" the Connors in petitioning for dissolution of East Street.

Nor do we believe, as Baybank argues, that a receiver appointed under RSA 304-A:28 could petition "by or for a partner" for dissolution. That section provides that the court "may then or later appoint a receiver of [the debtor partner's] share of the profits, and of any other money due or to fall due to him in respect to the partnership, and make all other orders, functions, accounts and inquiries which the circumstances of the case may require." RSA 304-A:28, I. Under our reading of this section, the express purpose for which a receiver may be appointed is to collect whatever money the partnership distributes that would otherwise have gone to the debtor partner. It is the court, not the receiver, that is authorized by the statute to "make all other orders, functions, accounts and inquiries." RSA 304-A:28, I. Therefore, we are not persuaded by Baybank's citation of *Leventhal v. Five Seasons*, 581 A.2d 449 (Md. Ct. Spec. App. 1990), for the proposition that a receiver may petition for dissolution because the receiver "stands in the shoes of the debtor/partner." *Id.* at 452. That assertion appears to have been based on the premise that "[t]he receiver may do whatever the debtor partner could do by way of orders, directions, accounts, or inquiries," *id.* at 451 (quotation omitted), a premise not supported by our reading of the statute.

Moreover, even if Baybank could petition on behalf of the Connors for dissolution of East Street, we find that the conditions for judicial dissolution under RSA 304-B:45 are not met in this case. Baybank argues that it is not reasonably practicable for East Street to carry on its business in conformity with its partnership agreement because East Street does not generate and distribute to its limited partners enough income to meet even the interest payments on the Connors' judgment debt. Even if we were to accept Baybank's statement that "the purpose of *every* partnership is to make a profit for its partners," however, we fail to see how East Street's alleged inability to distribute enough income to its partners to enable them to pay their *personal* debts renders the *partnership* unprofitable.

Finally, Baybank argues that allowing the Connors to use East Street as a shield against their personal creditors would be contrary to reason and against public policy. Baybank therefore asks us to read an exception into the statutory scheme to address the Connors'

alleged attempt to defraud Baybank by transferring the Tewksbury property into East Street. We decline to do so. We note that the case upon which Baybank primarily relies, *Taylor*, 12 Cal. Rptr. 323, involved an alleged fraudulent transfer of property out of a partnership, not into one. *Id.* at 330. In that case, the issue was the frustration of the charging order remedy when the fraudulent transfer of *partnership* assets ensured that there would be no profits or surplus from which the charging creditor could be satisfied. *Id.*

In the instant case, the value of the Connors' partnership interests, the only assets to which Baybank is entitled to look for satisfaction of its judgment, has not been placed beyond Baybank's reach. The purposes of RSA 304-B:41 and RSA 304-A:28 have not been frustrated. To the extent that Baybank believes the initial conveyance of the Tewksbury property from the Connors to East Street to have been fraudulent, its recourse lies in fraudulent conveyance law, not in a judicially created exception to the partnership statutes.

Since we find that Baybank had no standing to seek judicial dissolution of East Street, we need not address the parties' arguments regarding the proper parties to such a proceeding. We hold that the trial court erred in ordering dissolution of East Street, and we reverse that portion of the trial court's order. Since it appears that the trial court ordered the appointment of a receiver solely to assist in the dissolution of East Street, rather than for purposes authorized under the ULPA, by reference to UPA, we vacate that portion of the trial court's order and remand for further proceedings not inconsistent with this opinion.

*Affirmed in part; reversed in part; vacated in part; remanded.*

All concurred.