Argued and submitted January 29, 2015, vacated and remanded March 2, on appellants' petition for reconsideration filed March 18, and on respondent's petition for reconsideration filed March 22, allowed by opinion July 27, 2016
See 279 Or App 808, ___ P3d ___ (2016)

Robert LAW,
on behalf of the Robert M. Law Profit Sharing Plan,
*Plaintiff-Respondent,*

*v.*

Ronald ZEMP,
*Defendant,*

*and*

FOREVER YOUNG OREGON, LLC;
The Ron Zemp Family 1 Limted Partnership;
The Ron Zemp Family 2 Limited Partnership;
The Ron Zemp 3 Family Limited Partnership;
and The Ron Zemp 4 Family Limited Partnership,
*Other-Appellants.*

Washington County Circuit Court
C121752CV; A153071

368 P3d 821

Natalie C. Scott argued the cause for appellants. With her on the briefs was The Scott Law Group.

Bruce H. Orr argued the cause for respondent. With him on the brief was Wyse Kadish, LLP.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

LAGESEN, J.

## LAGESEN, J.

Plaintiff, Law, in his capacity as the trustee for a trust, obtained a money judgment against defendant, Zemp. Zemp did not pay. To collect, Law asked the trial court to enter a charging order under ORS 70.295 against the four limited partnerships in which Zemp is a partner. Law also asked the court to enter a charging order under ORS 63.259 against the limited liability company in which Zemp is a member. The trial court granted Law's request, and entered an order directing the limited partnerships and LLC (collectively, "the companies") to pay to Law "any and all distributions, credits, drawings, or payments due to" Zemp.

The trial court's order also did more. It imposed four additional obligations on the companies: (1) the companies were prohibited from making any loans until the judgment was paid; (2) the companies and their members were prohibited from transferring, modifying, or encumbering any partnership or membership interest without approval from the court or from Law until the judgment was paid; (3) the companies were required to open their books and certain tax records for inspection by Law; and (4) the companies were required to provide future financial statements to Law. The order also stated that Law was entitled to seek modification of the order to allow for the appointment of a receiver and the foreclosure of Zemp's interests in the companies.

The companies have appealed the order. The issue on appeal is whether the trial court exceeded the scope of its authority under the statutes governing charging orders against limited partnerships and LLCs when it imposed the additional obligations on the companies. We conclude that it did, in part. Specifically, with respect to the charging order against the limited partnerships, we conclude that, under the pertinent statutes, the trial court was authorized to require the limited partnerships to disclose financial information to Law. On this record, however, the trial court acted outside of its authority by imposing the restrictions on loans and on the transfer or encumbrance of partnership interests. With respect to the charging order against the LLC, we conclude that the trial court was not authorized to impose

the additional obligations. Accordingly, we vacate the trial court's order and remand for further proceedings.

## I. BACKGROUND

This appeal requires us to determine the scope of a trial court's authority when entering a charging order against a limited partnership or a limited liability company. As the parties accurately have observed, the case law discussing the charging order remedy in Oregon is spare, and does not provide much guidance even as to what a charging order is. For that reason, to provide context for our analysis, we provide a brief history of the development of the charging order remedy, and its adoption in the United States and in Oregon. We then address the order entered in this case, and the extent to which it was authorized by the pertinent statutory provisions.

### A. *The History of the Charging Order*

The charging order is a remedy born to solve a particular problem: how to permit a judgment creditor of a partner to collect from the partner's interest in a partnership without disrupting or destroying the partnership. Before the charging order, the remedies devised by courts to assist a judgment creditor of a partner often did more harm than good. As one commentator explains:

> "'When a creditor obtained a judgment against one partner and he wanted to obtain the benefit of that judgment against the share of that partner in the firm, the first thing was to issue a [writ of execution], and the sheriff went down to the partnership place of business, seized everything, stopped the business, drove the solvent partners wild, and caused the execution creditor to bring an action in Chancery in order to get an injunction to take an account and pay over that which was due by the execution debtor. A more clumsy method of proceeding could hardly have grown up.'"

J. Gordon Gose, *The Charging Order Under the Uniform Partnership Act*, 28 Wash L Rev 1, 1 (1953) (quoting *Brown, Janson & Co. v. Hutchinson & Co.*, 1 QB 737 (1895)). Other judicially crafted remedies included:

> "(1) seizure of some or all of the partnership property under writ of execution; (2) sale of the debtor partner's interest in the property; (3) acquisition of the debtor partner's interest in the property by the purchaser at the execution sale, subject, however, to the payment of partnership debts and prior claims to the firm against the debtor partner; (4) compulsory dissolution and winding up of the partnership, and (5) distribution to the execution purchaser of the debtor partner's share of any property remaining after the winding up process was completed."

*Id.* at 1-2 (internal quotation marks omitted); *see* Francis M. Burdick, *The Law of Partnership* § 5.2, 269-77 (3rd ed 1917) (describing the traditional remedies available to judgment creditors of a partner). Thus, a judgment creditor could enforce a judgment against the judgment debtor's intangible interest in a partnership only

> "by a procedure commencing with the seizure of property but in its later stages converted into a proceeding whereby the debtor's beneficial interest in the business is made available to his creditor. The final result, however, could be attained only at the expense of the disruption of the business and the compulsory dissolution of the partnership."

Gose, 28 Wash L Rev at 2. In the end, the main consequence of such remedies was a devaluation of all of the partnership interests, including those from which the judgment creditor initially hoped to collect. *Id.*

Legislatures began to work on the problem, determined to find a solution where courts had failed. And in 1891, the British Parliament devised one: an order charging the debtor partner's interest in partnership property and profits with the unpaid amount of the judgment against the partner—an order that has become known as a charging order. Burdick, *The Law of Partnership* § 5.2 at 276-77; Gose, 28 Wash L Rev at 2-3. As the Supreme Court has described it, a charging order is "a simple, effective method whereby a judgment creditor of a partner may have the latter's interest in the partnership applied upon the judgment debt." *Scott v. Platt*, 177 Or 515, 522, 163 P2d 293 (1945).

Legislatures in the United States soon followed Parliament's lead in adopting the charging order. The National Conference of Commissioners on Uniform State

Laws promulgated the first Uniform Partnership Act (UPA) in 1914, and included the charging order remedy in the act:

> "On due application to a competent court by any judgment creditor of a partner, the court which entered the judgment, order, or decree, or any other court, may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon; and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect of the partnership, and make all other orders, directions, accounts and inquiries which the debtor partner might have made, or which the circumstances of the case may require."

Uniform Partnership Act § 28(1) (1914). According to Professor William Lewis, who was known as the principal architect of the UPA, the charging order provision was intended to operate as follows:

> "After the adoption of the Act, when a judgment is secured against a partner by his separate creditor, all that the creditor will have to do is to apply to the court which gave him the judgment, or to any other court, to issue an order on the other partners to pay him the profits which would be otherwise paid to his debtor, or to make any further order which will result in his securing the payment of his judgment without unduly interfering with the rights of the remaining partners in partnership property."

William Draper Lewis, *The Uniform Partnership Act*, 24 Yale L J 617, 634 (1915). Although the UPA has been revised several times (RUPA), the provision governing charging orders has remained more or less the same.

Two years after promulgating the UPA, the National Conference of Commissioners on Uniform State Laws promulgated the Uniform Limited Partnership Act (ULPA), which also included the charging order remedy. Originally, the charging order provision of the ULPA was almost identical to that contained in the UPA. The Uniform Limited Partnership Act § 22(1) (1916) provides:

> "On due application to a court of competent jurisdiction by any judgment creditor of a limited partner, the court may charge the interest of the indebted limited partner with payment of the unsatisfied amount of the judgment

debt; and may appoint a receiver, and make all other orders, directions, and inquiries which the circumstances of the case may require."

When the ULPA was revised in 1976, the reference to the possible appointment of a receiver and other ancillary orders was omitted from the charging order provision. Uniform Limited Partnership Act (RULPA) § 703 (1976) provides:

"On application to a court of competent jurisdiction by any judgment creditor of a partner, the court may charge the partnership interest of the partner with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the partnership interest. This does not deprive any partner of the benefit of any exemption laws applicable to his partnership interest."

The commentary to the provision explained that, in revising the ULPA, the drafters had "not carried over some provisions [from the charging order statute in the 1916 act] that were thought to be superfluous. For example, references * * * to specific remedies have been omitted * * *."

Numerous states, including Oregon, have adopted both the RUPA and the RULPA, including the provisions relating to charging orders.

B.  *The Charging Order in Oregon*

The Oregon legislature adopted the UPA in 1939, Or Laws 1939, ch 550, and replaced it with the RUPA in 1997, Or Laws 1997, ch 775. *See Thompson v. Coughlin,* 329 Or 630, 635-37, 637 n 7, 997 P2d 191 (2000) (explaining Oregon's enactment history of the uniform partnership act). As a result, under ORS 67.205, the charging order is a remedy available to the creditor of a partner in an Oregon general partnership. That statute provides:

"(1)  On application by a judgment creditor of a partner or of a partner's transferee, a court having jurisdiction may charge the transferable interest of the judgment debtor to satisfy the judgment. The court may appoint a receiver of the share of the distributions due or to become due to the judgment debtor in respect of the partnership and make all other orders, directions, accounts and inquiries

the judgment debtor might have made or that the circumstances of the case may require.

"(2) A charging order constitutes a lien on the judgment debtor's transferable interest in the partnership. The court may order a foreclosure of the interest subject to the charging order at any time. The purchaser at the foreclosure sale has the rights of a transferee.

"(3) At any time before foreclosure, an interest charged may be redeemed:

"(a) By the judgment debtor;

"(b) With property other than partnership property, by one or more of the other partners; or

"(c) With partnership property, by one or more of the other partners with the consent of all the partners whose interests are not so charged.

"(4) This chapter does not deprive a partner of a right under exemption laws with respect to the partner's interest in the partnership.

"(5) This section provides the exclusive remedy by which a judgment creditor of a partner or partner's transferee may satisfy a judgment out of the judgment debtor's transferable interest in the partnership."

ORS 67.205.

The Oregon legislature adopted the ULPA in 1971, Or Laws 1971, ch 594, and replaced it with the RULPA in 1985, Or Laws 1985, ch 677. As a result, under ORS 70.295, the charging order is a remedy available to the creditor of a partner in an Oregon limited partnership. That statute states:

"On application to a court of competent jurisdiction by any judgment creditor of a partner, the court may charge the partnership interest of the partner with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the partnership interest. This chapter does not deprive any partner of the benefit of any exemption laws applicable to the partner's partnership interest."

ORS 70.295.

In addition, when it enacted Oregon's Limited Liability Company Act (the OLLCA),[1] the legislature made the charging order a remedy available to creditors of a member of a limited liability company. Specifically, ORS 63.259 states:

> "On application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge the membership interest of the member with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the membership interest. This chapter shall not deprive any member of the benefit of any exemption laws applicable to the member's membership interest."

## C. *This Case*

After Zemp failed to pay the judgment, Law filed an "Ex Parte Motion for Order to Show Cause for a Charging Order and Temporary Restraining Order." That motion requested that the court (1) require that Zemp and the companies account for "all amounts due and to become due to [Zemp] on account of his interest in [the companies,]" (2) enjoin Zemp "from transferring, conveying, assigning, or otherwise disposing of any property owned by [the companies] or his interest in [the companies]," and (3) charge Zemp's membership interest in the companies. Law attached a proposed "Charging Order" to the motion. That proposed order stated:

> "1. The interests of * * * Zemp, whether as a member, a partner (general or limited), or otherwise in and to the following companies is charged with payment of the unsatisfied amount of the judgments entered against him herein on May 30, 2012, and on June 13, 2012, including interest and costs:
>
> "a. Forever Young Oregon LLC;
>
> "b. The Ron Zemp 1 Family Limited Partnership;

---

[1] Unlike Oregon's statutes governing partnerships and limited partnerships, Oregon's statute governing limited liability companies was not drawn exclusively from a uniform act. Instead, Oregon's Limited Liability Company Act was drafted by an Oregon State Bar Task Force. Thomas J. Sayeg, *Oregon Limited Liability Company Act: Management Characteristics*, 73 Or L Rev 113, 113 (1994).

"c.   The Ron Zemp 2 Family Limited Partnership;

"d.   The Ron Zemp 3 Family Limited Partnership; and

"e.   The Ron Zemp 4 Family Limited Partnership.

"(Collectively the 'The Companies').

"2.   The Companies are directed to pay [Law] present and future shares of any and all distributions, credits, drawings, or payments due to * * * Zemp until the judgment is satisfied in full, including interest and costs.

"3.   Until said judgments are satisfied in full, including interest and costs, the Companies shall make no loans to any partner or anyone else.

"4.   Until said judgments are satisfied in full, including interest and costs, the Companies shall make no capital acquisitions without either Court approval or the approval of [Law].

"5.   Until said judgments are satisfied in full, including interest and costs, neither the Companies nor its members shall undertake, enter into, or consummate any sale, encumbrance, hypothecation, or modification of any partnership interest without either Court approval or the approval of [Law].

"6.   Within ten days of service of a certified copy of this Order upon the Companies, they shall supply to [Law] full, complete, and accurate copies of the applicable membership or partnership agreements, including any and all amendments or modifications thereto; true, complete, and accurate copies of any and all Federal and State income tax or informational income tax returns filed within the past two years; balance sheets and profit and loss statements for the past two years; and balance sheets and profit and loss statements for the most recent present periods for which same has been computed. Further, upon ten (10) days notice from [Law] to the Companies, all books and records shall be produced for inspection, copying, and examination in the office of [Law].

"7.   Until the judgments are satisfied in full, including all costs and interest thereon, all future statements reflecting cash position, balance sheet position, and profit and loss, the Companies shall supply to [Law] within thirty (30) days of the close of their respective accounting periods for which said data is or may be generated.

"8.   Upon due application, [Law] may request modification of this Order in the event he feels he has cause to seek the appointment of a receiver for any of the Companies or the sale of [Zemp's] interests in the Companies as provided by law.

*"Breach of this Order without due application to this Court shall be considered a contempt of this Court and may be punishable by fine or imprisonment or both."*

(Boldface and italics in original.) The trial court issued the order to show cause, and Law served it on Zemp and the companies.

Zemp did not respond to the motion or show cause order, but the companies did. They argued, among other things, that Zemp no longer had any interest in any of the companies. They also argued that paragraphs three, four, five, six, and seven of the proposed order "exceed[] the statutory authority of a charging order." Specifically, the companies asserted that the charging order statutes allow only a "judgment creditor to receive * * * the income and or distributions that will be made in the future * * * to [Zemp]."

After a hearing, the trial court entered the order requested by Law in the form requested by Law, except the trial court struck paragraph four of the proposed order and changed some of the timelines for compliance with the order. Additionally, the trial court requested that the companies prepare a protective order limiting the disclosure of sensitive or confidential documents by the parties while complying with the charging order.

The companies moved for reconsideration. They renewed their arguments that certain provisions of the court's order exceeded the court's statutory authority, and also raised two new arguments: (1) that in issuing the order, the court violated multiple provisions of the Oregon Rules of Civil Procedure and (2) that the court's order violated due process. The trial court held a hearing on the motion, but ultimately denied it on the ground that the law did not provide for such a "do-over" motion, and that the court saw no

basis to reconsider its prior ruling. The companies appeal the trial court's order.[2]

On appeal, the companies assign error to the trial court's failure to strike paragraphs three, five, six, seven, and eight of the order. Specifically, the companies argue that the trial court erred by (1) "restricting [the companies] from making loans to partners or anyone else" in paragraph three, (2) "restricting [the companies] and their member/partners from selling or encumbering their member/partnership interests" in paragraph five, (3) "ordering [the companies] to turn over documents by specified dates and in granting [Law] access to all books and records" in paragraphs six and seven, and (4) "allowing [Law] to seek receivership and foreclosure on a motion to modify the Charging Order" in paragraph eight. The companies assert—as they did below—that the trial court exceeded the scope of its authority under the charging order statutes in both the limited partnership and LLC acts. The companies argue that, although the charging order statutes allow a court to "charge" the partnership or membership interests of a judgment debtor, those statutes limit the scope of the interests that a judgment debtor receives to "'only' the rights of an assignee" of those interests. Further, the companies argue that both the RULPA and OLLCA make clear that an assignee "gets only the limited right to receive distributions, the 'financial' interest/ rights, and nothing more." In addition, the companies renew the arguments that they presented to the trial court in their motion for reconsideration.

In response, Law asserts that the text and context of the charging order statutes establish that a trial court may, in addition to charging a judgment debtor's interest, "in its discretion, [enter] orders that will help to accomplish the purpose of the charging order." However, with respect to the companies' challenge to paragraph eight of the charging order, Law has told us that he "does not oppose amending the Charging Order to delete that paragraph." As to the

---

[2] The trial court's order in this case is not a judgment, but the obligations that it imposes affect the substantial rights of the companies. For that reason, ORS 19.205(3) permits this appeal. ORS 19.205(3) (authorizing appeal from an "order that is made in the action after a general judgment is entered * * * that affects a substantial right" of a party).

companies' arguments regarding the order's compliance with the Oregon Rules of Civil Procedure and due process, Law contends that they do not present any grounds for reversal, in light of the fact that they were presented to the trial court for the first time in a motion for reconsideration.

## II. STANDARD OF REVIEW

The issue in this case is whether the trial court exceeded its statutory authority when it included the contested provisions in its order charging Zemp's interests in the companies with the obligation to pay the unpaid judgment. We review for legal error a trial court's interpretation and application of a statute. *State v. Edwards*, 231 Or App 531, 533, 219 P3d 602 (2009).

## III. ANALYSIS

The specific issue in this case is whether the trial court had the authority to enter the contested provisions of the order (1) restricting the companies' abilities to make loans; (2) restricting the partners in the limited partnerships and the members in the LLC from encumbering or transferring their interests; (3) requiring the disclosure of certain financial information to Law; and (4) providing for the appointment of a receiver upon motion by Law. For the reasons that follow, we conclude that, as to the limited partnerships, the trial court permissibly entered the orders requiring disclosure of information to Law, but that the other orders issued by the court must be vacated. With respect to the order against the LLC, we conclude that the trial court lacked the authority to include the contested provisions in its order. However, before addressing that statutory construction issue, we dispose of two matters.

First, as to the companies' arguments regarding the order's compliance with due process and the Oregon Rules of Civil Procedure, as noted, the companies raised those arguments for the first time in a motion for reconsideration. The trial court ultimately denied the motion on the ground that the companies were not entitled to a "do-over." In so doing, the court acted within its discretion. *See R & C Ranch, LLC v. Kunde*, 177 Or App 304, 316, 33 P3d 1011 (2001) (declining to consider arguments raised for the first

time in a motion for reconsideration because, "[i]f [a party] may appeal the denial of its motion for reconsideration on a ground that could have been raised in opposition to the original motion * * *, then it will have circumvented the obligation to file a timely response to the original motion"); *Carter v. U. S. National Bank*, 304 Or 538, 546, 747 P2d 980 (1987) (Peterson, C. J., concurring), *overruled on other grounds by Assoc. Unit Owners of Timbercrest Condo. v. Warren*, 352 Or 583, 288 P3d 859 (2012) ("Lawyers filing motions to reconsider after entry of judgment might better denominate such a motion as a 'motion asking for trouble[.]' * * * Use of such motions creates uncertainty and should be discouraged."). Beyond that, to the extent the companies argue that we should consider the issues raised in the motion for reconsideration in the context of plain error review, we conclude that any error by the trial court is not plain.

Second, as noted, Law has informed us that he is not opposed to amending the order to eliminate paragraph 8, regarding the potential appointment of a receiver. For that reason, we do not evaluate the propriety of that paragraph; in view of the parties' apparent agreement that the paragraph is not necessary, the trial court should simply strike it on remand.

As to the statutory interpretation questions, we must determine whether the RULPA authorized the trial court to enter the challenged provisions with respect to the four limited partnerships, and whether the OLLCA authorized the trial court to enter the challenged order with respect to the LLC. Our goal in interpreting those statutes is to determine the intent of the legislature that enacted them. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). To achieve that goal, we examine the text and context of the statutory provisions at issue, and then look to legislative history if helpful. *State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012). "In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties." *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997).

Additionally, Oregon's partnership and limited partnership statutes are drawn from uniform laws, and the

legislature explicitly has directed that, in interpreting their provisions, those laws be construed so as to make the law uniform across the states adopting those acts, ORS 67.800; ORS 70.600.[3] For that reason, we look to the case law of other state courts interpreting those uniform laws in the states that have adopted them, so as to help make the law uniform across state boundaries. *See GPL Treatment, Ltd. v. Louisiana-Pacific Corp.*, 323 Or 116, 124, 914 P2d 682 (1996); *Ivers v. Salladay*, 253 Or App 195, 204, 289 P3d 334 (2012).

A.  *Limited Partnerships*

Was the trial court authorized to enter the challenged provisions in its order against the limited partnerships? We conclude that it had the general authority to issue such orders, but that the trial court acted outside its discretion in imposing the restriction on loans, and the restriction on the partners' ability to encumber or transfer their partnership interests.

As noted, ORS 70.295 states:

"On application to a court of competent jurisdiction by any judgment creditor of a partner, the court may charge the partnership interest of the partner with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the partnership interest. This chapter does not deprive any partner of the benefit of any exemption laws applicable to the partner's partnership interest."

The companies point out—correctly—that, unlike ORS 67.205 (the statute governing charging orders in the RUPA), ORS 70.295 does not state that a trial court may make additional orders in aid of enforcement of a charging order. From that omission, the companies reason that the legislature did not confer upon a trial court the same authority to enforce a charging order against a limited partnership by ancillary orders that it conferred upon a trial court with respect to charging orders against general partnerships.

---

[3] ORS 67.800 states, "This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." ORS 70.600 states, "This chapter shall be so applied and construed to carry out its general purpose of making the law with respect to limited partnerships uniform among states enacting this chapter."

That argument, although a plausible reading of the text of ORS 70.295, loses force when the text of the statute is considered in context. In particular, the argument overlooks ORS 70.615. That statute states, "In any case governing limited partnerships that is not provided for in this chapter, the provisions of ORS chapter 67 govern." ORS 70.615. In other words, the provisions of the RUPA supplement the provisions of the RULPA. And, in particular, as the many other courts to have considered the question have concluded, the remedy provisions of the charging order statute in the RUPA supplement the charging order statute in the RULPA. Those remedy provisions provide a court that issues a charging order against a limited partnership the same authority that it has when issuing a charging order against a general partnership: the authority to "make all other orders, directions, accounts and inquiries the judgment debtor might have made or that the circumstances of the case may require." ORS 67.205.

The New Hampshire Supreme Court's decision in *Baybank v. Catamount Const., Inc.*, 141 NH 780, 693 A2d 1163 (1997), is illustrative and on point. There, the court considered whether "the appointment of a receiver and sale of a charged partnership interest are authorized under the charging order provision of the" uniform limited partnership act. *Id.* at 783, 693 A2d at 1165. To resolve that issue, the Supreme Court looked to the relevant provisions of both the uniform limited partnership and general partnership acts. As an initial matter, the court noted that the Uniform Limited Partnership Act "provides that [i]n any case not provided for in this chapter the provisions of the Uniform Partnership Act *** shall govern." *Id.* (internal quotations marks omitted). Then, the court cited the charging order statute from the Limited Partnership Act[4]—which is

---

[4] The charging order statute from New Hampshire's Limited Partnership Act provides:

"On application to a court of competent jurisdiction by any judgment creditor of a partner, the court may charge the partnership interest of the partner with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the partnership interest. This chapter does not deprive any partner of the benefit of any exemption laws applicable to his partnership interest."

*Baybank*, 141 NH at 783-84, 693 A2d at 1166.

identical to the wording under Oregon's act—and concluded that that "section does not provide a method for enforcing the charging order." *Id.* at 784, 693 A2d at 1166. Based on that conclusion, the court further concluded that it should look to the terms of the Uniform Partnership Act in order to determine whether the trial court exceeded its authority in issuing the charging order:

> "We therefore find that [the charging order statute of the limited partnership act] does not 'provide [] for,' * * * a case such as this, and that the legislature intended that reference be made to the [uniform partnership act] for the means of enforcing the creditor's rights in the charged partnership interest."

*Id.* Because the mechanisms for enforcing a charging order against a partnership included a receivership and sale, the court concluded that those mechanisms were available to enforce a charging order against a limited partnership.

Other state appellate courts have reached the same conclusion. *See Madison Hills Limited Partnership II v. Madison Hills, Inc.*, 35 Con App 81, 88, 644 A2d 363, 368 (1994) (charging order provision of Uniform Partnership Act supplements Uniform Limited Partnership Act); *Nigri v. Lotz*, 216 Ga App 204, 205-06, 453 SE 2d 780, 782-83 (1995) (same); *City of Arkansas City v. Anderson*, 242 Kan 875, 889-90, 752 P2d 673, 683 (1988); *Lauer Const., Inc. v. Schrift*, 123 Md App 112, 117-19, 716 A2d 1096, 1098-99 (1998) (same). Although the District Court of Appeals of Florida appears to have reached a different conclusion, *see Givens v. National Loan Investors, L. P.*, 724 So 2d 610 (1998), in reaching that conclusion, that court did not consider how the provisions of the Uniform Partnership Act supplemented the provisions of the Uniform Limited Partnership Act. In all events, we are persuaded by the reasoning of the majority of the courts that have addressed the issue, and are also persuaded that we should construe Oregon's partnership and limited partnership statutes in harmony with those courts, so as to promote uniformity in the law. That, as we have noted, is what the legislature has directed us to do. ORS 67.800; ORS 70.600.

Thus, under our construction of the partnership statutes, the trial court had the authority to enter ancillary

orders in aid of the enforcement of the charging order to the extent those ancillary orders were ones that "the judgment debtor might have made or that the circumstances of the case may require." ORS 67.205. The question, then, is whether the challenged provisions either were directives that Zemp himself, the judgment debtor, could have made and, if not, were ones "that the circumstances of the case may require."

The orders requiring disclosure of financial information plainly were ones that "the judgment debtor might have made." A partner in a limited partnership has a right to obtain that information. ORS 70.145 (providing limited partner with right of access to information, including financial information); ORS 70.185 (providing that general partner in limited partnership has same rights as partner in partnership with no limited partners); ORS 67.150 (providing that partner in partnership is entitled to access partnership's "books and records"). As a result, the trial court acted within its discretion by requiring that the limited partnerships provide Law with the specified financial information.

We conclude otherwise with respect to the provisions of the order (1) restricting the limited partnerships from making loans; and (2) restricting the limited partners from encumbering or transferring their interests. We are unable to locate anything either in the statutes governing partnerships or limited partnerships, or in the record, that indicates that Zemp would have had the authority to make those directives. Beyond that, the trial court does not appear to have determined that those provisions are ones that "may be required" by the particular circumstances of this case, and the record developed before the trial court does not indicate why those additional restrictions on the limited partnerships "may be required" to ensure that the limited partnerships comply with their obligations under the charging orders. For that reason, on this record, the imposition of those provisions was beyond the court's discretion, and we vacate those provisions as to the limited partnerships.[5]

---

[5] Our determination that those restrictions were outside the court's discretion to impose does not preclude the trial court from re-imposing those restrictions against the limited partnerships on remand if Law demonstrates that such restrictions "may be required" to ensure that the limited partnerships comply with the charging order.

## B. *Limited Liability Companies*

The next question is whether the trial court was authorized to impose the challenged provisions of its order against the LLC. We conclude that the answer to that question is no.

Similarly to the charging order provision of the RULPA, the charging order provision of the OLLCA, ORS 63.259, states:

"On application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge the membership interest of the member with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the membership interest. This chapter shall not deprive any member of the benefit of any exemption laws applicable to the member's membership interest."

As is the case with the charging order provision of the RULPA, that provision does not itself state that a court has the authority to enforce a charging order by issuing other ancillary orders. Unlike the RULPA, however, the OLLCA does not direct us to look to the RUPA as a supplement to its provisions. Moreover, the legislature has not otherwise stated in the OLLCA itself that a trial court may enforce a charging order by issuing ancillary orders like the ones authorized under ORS 67.205. Beyond that, the OLLCA is not a uniform act, and the legislature has not instructed us to construe it to promote uniformity among the states, as it has with respect to the RUPA and the RULPA.

Under those circumstances, we conclude that that the legislature did not authorize a trial court to enforce a charging order against an LLC through ancillary orders like the ones the legislature has authorized in the case of charging orders against partnerships. To hold otherwise would require us, in effect, to rewrite the OLLCA to supply the charging order enforcement mechanism that the legislature itself supplied with respect to general partnerships and limited partnerships. That is something we may not do. ORS 174.010; *Halperin v. Pitts*, 352 Or 482, 495, 287 P3d

1069 (2012). Accordingly, the challenged provisions must be vacated to the extent that they apply to the LLC.[6]

For the foregoing reasons, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

Vacated and remanded.

---

[6] We hold only that the legislature has not authorized a trial court to impose such additional orders in the context of enforcing a charging order entered under ORS 63.259. Law has not identified any other source of authority for such orders in favor of a judgment creditor of a member of an LLC and, to the extent such authority may exist, we express no opinion on the scope of that authority.