302 January 11, 2018 No. 1

IN THE SUPREME COURT OF THE
STATE OF OREGON

Robert LAW,
on behalf of the Robert M. Law Profit Sharing Plan,
*Respondent on Review,*

*v.*

Ronald ZEMP,
*Defendant,*
*and*

FOREVER YOUNG OREGON, LLC;
The Ron Zemp Family 1 Limited Partnership;
The Ron Zemp Family 2 Limited Partnership;
The Ron Zemp 3 Family Limited Partnership; and
The Ron Zemp 4 Family Limited Partnership,
*Petitioners on Review.*

(SC S064387) (Control)

Robert LAW,
on behalf of the Robert M. Law Profit Sharing Plan,
*Petitioner on Review,*

*v.*

Ronald ZEMP,
*Defendant,*
*and*

FOREVER YOUNG OREGON, LLC;
The Ron Zemp Family 1 Limited Partnership;
The Ron Zemp Family 2 Limited Partnership;
The Ron Zemp 3 Family Limited Partnership; and
The Ron Zemp 4 Family Limited Partnership,
*Respondents on Review.*

(S064415)

(CC C12-1752CV; CA A153071;
SC S064387 (Control), S064415)

On review from the Court of Appeals.*

_____

* On appeal from Washington County Circuit Court, Suzanne Upton, Judge. 276 Or App 652, 368 P3d 821, *adh'd* to *on recons*, 279 Or App 808, 381 P3d 1099 (2016)

Argued and submitted May 11, 2017.

Natalie C. Scott, The Scott Law Group, Eugene, argued the cause and filed the briefs on behalf of Forever Young Oregon, LLC, and the Ron Zemp Family Limited Partnerships.

Bruce H. Orr, Wyse Kadish, LLP, Portland, argued the cause and filed the briefs on behalf of Robert Law.

Before Balmer, Chief Justice, and Kistler, Walters, and Nakamoto, Justices, and Landau Senior Justice pro tempore, and Ortega, Judge of the Court of Appeals, Justice pro tempore.**

WALTERS, J.

The decision of the Court of Appeals is reversed. The order of the circuit court is vacated, and the case is remanded to the circuit court for further proceedings.

―――――――――――――
** Brewer, J., retired June 30, 2017, and did not participate in the decision of this case. Flynn, Duncan, and Nelson, JJ., did not participate in the consideration or decision of this case.

**WALTERS, J.**

This review proceeding arises out of a post-judgment order charging a judgment debtor's interests in four limited partnerships and a limited liability company to satisfy the judgment creditor's judgment against him. The charging order was issued over the limited partnerships' and limited liability company's objections that ancillary provisions included in the charging order, which required them to refrain from certain kinds of transactions and provide extensive financial information to the judgment creditor, were not authorized under the controlling statutes. On appeal, the Court of Appeals held that some, but not all, of the ancillary provisions were authorized. *Law v. Zemp*, 276 Or App 652, 368 P3d 821, *adh'd to on recons*, 279 Or App 808, 381 P3d 1099 (2016). We hold that a trial court has either general or specific statutory authority to include, in a charging order, ancillary provisions that it finds necessary to allow a judgment creditor access to a debtor-partner's distributional interest in a company, as long as those provisions do not unduly interfere with the company's management. We further hold that, in this case, the record does not establish that that standard was met and, therefore, that the trial court erred in imposing the challenged ancillary provisions. We reverse the decision of the Court of Appeals and vacate the circuit court order, and remand to the circuit court for further proceedings.

## I.   HISTORICAL FACTS

In 2012, plaintiff obtained a money judgment against defendant Ronald Zemp. After his initial attempts to collect the judgment were unsuccessful, plaintiff moved the trial court under ORS 70.295 and ORS 63.259 for an order directing Zemp to show cause why an order charging his interest in certain named companies to satisfy the judgment should not be entered.[1] The named companies were

---

[1] ORS 70.295 provides, in part:

"On application to a court of competent jurisdiction by any judgment creditor of a partner [of a limited partnership], the court may charge the partnership interest of the partner with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the partnership interest."

four limited partnerships (LPs), The Ron Zemp Family Limited Partnership 1, 2, 3 and 4, and a limited liability company (LLC), Forever Young Oregon LLC. In support of the motion, plaintiff submitted copies of public business registry records which identified Zemp as the general partner of each of the LPs and as the manager of the LLC. Plaintiff also submitted a proposed charging order which required the companies to pay all "distributions, credits, drawings or payments" they otherwise would have paid to Zemp to plaintiff until plaintiff's judgment against Zemp was satisfied in full. The proposed charging order also included the following ancillary provisions:

"3.   Until said judgments are satisfied in full, * * * the companies shall make no loans to any partner or anyone else.

"4.   Until said judgments are satisfied in full, * * * the companies shall make no capital acquisitions without either Court approval or the approval of [plaintiff].

"5.   Until said judgments are satisfied in full, * * * neither the companies nor its members shall undertake, enter into, or consummate any sale, encumbrance, hypothecation, or modification of any partnership interest without either Court approval or the approval of [plaintiff].

"6.   * * * [T]he companies * * * shall supply to [plaintiff] full, complete, and accurate copies of the applicable membership or partnership agreements, including any and all amendments or modifications thereto; true, complete and accurate copies of any and all Federal and State income tax or informational income tax returns filed within the past two years; balance sheets and profit and loss statements for the past two years; and balance sheets and profit and loss statements for the most recent present periods for which same has been computed. Further, upon ten (10) days notice * * *, all books and records shall be produced for inspection, copying examination in the office of [plaintiff].

---

In a similar vein, ORS 63.265 provides, in part:

"On application to a court of competent jurisdiction by any judgment creditor of a member [of a limited liability company], the court may charge the membership interest of the member with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the membership interest."

"7.   Until said judgments are satisfied in full, \*\*\* all future statements reflecting cash position, balance sheet position, and profit and loss, the companies shall supply to [plaintiff] within thirty (30) days of the close of their respect accounting periods for which said data is or may be generated.[2]"

The trial court issued the requested show cause order, setting a hearing date on the proposed charging order some three weeks out. The order was served on Zemp through each of the companies' registered agent.

Although Zemp himself did not appear in the ensuing proceeding, the companies filed objections and attended the hearing. The companies initially sought to establish, through a declaration by Zemp's business advisor, that Zemp had no personal ownership interest in any of the companies. Plaintiff moved to strike the declaration on a variety of grounds and also argued, on the merits, that the declaration did not disprove Zemp's status vis-à-vis the companies. The trial court granted plaintiff's motion to strike and moved on to the companies' second objection to the charging order—that, insofar as plaintiff's proposed charging order included ancillary provisions that would affect the companies' operations, it went beyond what the charging order statutes authorized. In response to that objection, plaintiff had argued that the provisions would help insure that Zemp did not use his control of the companies to keep his interests in them out of plaintiff's reach, without plaintiff having any way to know what had been done.[3] The companies insisted, however, that the provisions would invade the rights of the companies' other partners and members, and that, at the very least, they should not be allowed without the posting of a bond and a protective order. Thereafter, the hearing evolved into a more practical editorial session, with the trial court removing one provision (paragraph 4) in the proposed

---

[2] The proposed order contained another ancillary provision, identified as paragraph 8, which allowed plaintiff to seek modification of the charging order to provide for the appointment of a receiver. We have omitted that provision because it is not at issue in this review.

[3] Plaintiff previously had suggested to the court that Zemp controlled the companies and was operating them as "classic asset protection program[s]" rather than as businesses.

order, adjusting certain due dates set in the proposed order, and instructing the parties to devise a protective order for the financial disclosure requirements. The court approved and issued the charging order as edited.

The companies later filed a motion for reconsideration, arguing that, insofar as the provisions that remained affected the rights of partners in the companies who had not been made parties to the proceedings, inclusion of those provisions, particularly on such short notice, amounted to a violation of due process. But plaintiff responded, and the trial court agreed, that the companies could have and should have raised those objections in the original hearing, and that they presented no basis for reconsideration. Accordingly, the motion for reconsideration was denied.

## II.   THE COURT OF APPEALS DECISION

The companies decided to appeal and moved for a stay of the charging order as issued. Unable to persuade the trial court or the Court of Appeals to grant such a stay, they finally reached a partial settlement with plaintiff, under which plaintiff agreed to a stay of the objectionable ancillary provisions that remained in the order (paragraphs 3, 5, 6, and 7) in return for certain concessions, including the company's waiver of any right to challenge the basic provisions of the charging order (and, thus, to argue that Zemp was not a member or partner in the companies). The resulting stipulated order specified, however, that the companies "may argue on appeal that the trial court was without authority to include paragraphs 3, 5, 6, and 7 in the Charging Order [*i.e.*, the ancillary provisions barring certain transactions and requiring financial disclosures] because such paragraphs exceed what is allowable under the Oregon [Limited Liability Company] Act, Oregon's limited partnership statutes, or any other applicable law."

The companies then made that argument on appeal, and the Court of Appeals was persuaded in part. In a nutshell, the Court of Appeals held, with regard to the charging order as it applied to the LPs, that (1) the court's authority is controlled by a provision of the limited partnership statute, ORS 70.295, which impliedly incorporates a provision in

the general partnership statutes, ORS 67.205, under which courts issuing charging orders are authorized to "make all other orders, directions, accounts and inquiries the judgment debtor might have made or that the circumstances of the case might require"; (2) because the ancillary provisions in the charging order requiring disclosure of financial information (paragraphs 6 and 7) were ones that the judgment debtor might have made as a general partner in the limited partnership, the court was authorized to include those provisions in the charging order against the LPs; (3) because the ancillary provisions restricting the limited partnerships from making loans and transferring partnership interests (paragraphs 3 and 5) were *not* ones that the judgment debtor might have made, and because the trial court had *not* made any clear determination that those provisions were required under the circumstances to ensure compliance with the charging order, the trial court lacked "discretion" to issue them; (4) on remand, if plaintiff demonstrated to the trial court's satisfaction that the latter provisions were ones that "might [be] require[d]" to ensure that the LPs comply with the charging order, the trial court could reimpose those provisions. 276 Or App at 666-69.

With regard to the charging order as it applied to the LLC, the court held that, because that trial court's authority was controlled by a provision of the Oregon Limited Liability Company Act, ORS 63.259, that does not itself contain any wording authorizing the issuance of ancillary orders to enforce a charging order against a limited liability company, and does not incorporate by implication any provision that grants such authority, the trial court lacked authority to issue *any* of the ancillary orders that it did against the LLC. *Id.* at 670-71. Finally, the Court of Appeals declined to consider the companies' arguments invoking due process and the Oregon Rules of Civil Procedure, holding that the trial court had acted within its discretion in declining to consider those arguments when the companies raised them for the first time in a motion for reconsideration. *Id.* at 664-65.

The Court of Appeals subsequently allowed the parties' separate petitions for reconsideration to clarify a point regarding the standard of review it had applied. *Law v. Zemp*, 279 Or App 808, 809, 381 P3d 1099 (2017). Although,

in its original opinion, the court had referred to the trial court's imposition of some of the ancillary requirements as "beyond the court's discretion," it explained that, in fact, its holding was that the court had "legally erred by imposing the provisions in a manner that did not comport with the statute." *Id*. That holding, the court explained, was predicated on a conclusion that the trial court had imposed those provisions without first making the required prerequisite determination that the provisions were ones that either the judgment debtor might have made or that the circumstances of the case "may require." *Id*. at 809-10. After the opinion on reconsideration issued, both parties filed petitions for review, which we allowed.

### III.   THE PARTIES' ARGUMENTS TO THIS COURT

Before this court, the companies appear to be satisfied with the Court of Appeals' evaluation of the ancillary provisions as they apply to the LLC. However, the companies challenge the Court of Appeals' evaluation of the ancillary provisions in the charging order as they apply to the LPs. They contend that, contrary to the Court of Appeal' analysis, ORS 70.295 does not authorize a trial court to include ancillary provisions in a charging order against a limited partnership in *any circumstance*.[4]

Before this court, plaintiff argues that the Court of Appeals erred in its analysis of the ancillary provisions in the charging order as applied to both the LLC and the LPs. As to both types of entities, plaintiff criticizes the court's exclusive focus on whether the ancillary orders were authorized by the relevant charging order statutes, and argues that the court should have also considered whether the orders were authorized by other sources of law, including the inherent authority of courts to enforce their own orders. As to the LPs, plaintiff asserts that the court erred in remanding to the trial court to allow it to determine whether the ancillary restrictions on the operations of those entities were required

---

[4] The companies also press for review of the due process argument that the Court of Appeals declined to consider, insisting that it either was sufficiently preserved or is reviewable as error apparent on the fact of the record. Given our conclusion that none of the challenged ancillary provisions were authorized on this record, there is no need to consider that argument.

to ensure compliance with the charging order. Plaintiff contends that the remand was inappropriate because it arose in connection with an issue that the companies never raised and that, in any event, was based on an incorrect assumption—that the kind of ancillary orders at issue may only be included if the trial court first makes a specific finding, on the record, that the provisions are necessary under the circumstances.

Many of the issues that are before us in this case turn on the meaning of two charging order statutes, ORS 70.295 and 63.259, which pertain, respectively, to limited partnerships and limited liability companies. For reasons that will become apparent, those statutes must be considered in the context of the general history and purposes of the charging order remedy, including the history of the uniform acts from which one of the statutes is derived. Before turning to the particular issues of statutory construction that the parties have raised, we set out that contextual material.

## IV.   THE STATUTORY BACKDROP

A charging order is a creature of statute that was originally developed in the context of partnership law. Prior to the adoption of the charging order mechanism, common-law courts generally allowed a judgment creditor whose debtor was a partner in a business to enforce the judgment against the assets of the entire partnership. J. Gordon Gose, *The Charging Order under the Uniform Partnership Act*, 28 Wash L Rev 1, 1-2 (1953). The practice constituted an obvious invasion of the rights and interests of nondebtor partners and resulted in disruption of the partnership business and, often, a forced dissolution of the partnership. *Id*. at 2. Efforts to reform that problematic common-law approach culminated in the idea of a new statutory remedy for a judgment creditor seeking to collect from the judgment debtor's interest in a partnership—a judicial order charging the judgment debtor's distributional interest in the partnership with payment of the judgment, without disturbing the partnership's property or management.

A.   *The Uniform Partnership Act*

The charging order remedy first appeared in the United States as a provision of the Uniform Partnership Act

(UPA), adopted by the National Conference of Commissioners on Uniform State Laws (NCCUSL) in 1914. The provision in that original version of the UPA begins by instructing that a partner's individual right in partnership property is not subject to attachment or execution—thus precluding the seizure of partnership property to satisfy a judgment against a single partner. UPA § 25(c) (1914). It then allows for an order charging a debtor-partner's "interest" in a partnership itself with payment of the judgment debt, where the partner's "interest" is defined as the partner's share of the partnership's profits and surplus. *Id.* at §§ 28(1), 26. Finally, it provides that a court issuing a charging order also is authorized to (1) appoint a receiver of the profits due to the debtor-partner from the partnership and (2) "make all other orders, directions, accounts and inquiries which the debtor partner might have made or which the circumstances of the case may require." *Id.* at § 28(1).[5]

The charging order provision of the UPA is notably short on detail with respect to the procedures that were intended. But, although admittedly sparse, the cases and commentary in the years after the UPA's adoption suggest a general consensus that the provision gives courts broad authority to do what was necessary to obtain payment of the debt from the debtor-partner's share of the partnership profits without interfering with the rights of nondebtor partners. For example, shortly after the UPA's adoption, its principal architect, William Draper Lewis, described the intended operation of its charging order provisions:

> "'[W]hen a judgment is secured against a partner by his separate creditor, all that a creditor will have to do is to apply to the court which gave him the judgment *** to issue an order on the other partners to pay him the profits which would otherwise be paid to his debtor, or to make any further order which will result in his securing the payment of his judgment without unduly interfering with the rights of the remaining partners in partnership property.'"

Gose, 28 Wash L Rev at 11 (quoting statement made by William Draper Lewis one year after the UPA was adopted).

---

[5] Another subsection of the same provision implies that courts are authorized to direct a sale of the debtor-partner's interest in the partnership. UPA § 28(2).

And some forty years later, another prominent commenta-
tor, surveying the UPA's charging order provision and the
few decisions by American courts that relied on it, concluded
that the provision contemplated a "highly flexible and elas-
tic procedure" under which the debtor-partner's share of the
profits would be either diverted to the creditor or sold for the
creditor's benefit, with the court being authorized to appoint
a receiver and/or issue a broad range of orders as aids to
either of those methods of collecting the debt. Gose, 28 Wash
L Rev at 10.

B.  *The Uniform Limited Partnership Act*

        In 1916, two years after it adopted the UPA, the
NCCUSL adopted the Uniform Limited Partnership Act
(1916) ("ULPA").[6] The original ULPA contains its own
provision for charging orders, but it provides only for a
charging order against a limited partner's interest in the
limited partnership,[7] and is silent with respect to charging
orders against a general partner's interest. However, the
UPA charging order provision arguably becomes applica-
ble in such circumstances: Section 6(b) of the UPA provides
that, assuming that limited partnerships are provided for
by statute, the UPA "shall apply to limited partnerships
except insofar as the statutes relating to such partnerships
are inconsistent [t]herewith." And section 9 of the ULPA
provides that a general partner in a limited partnership
"shall have all the rights and powers and be subject to all

---

[6] Limited partnerships are a product of statute. In Oregon and other juris-
dictions that have enacted some version of the ULPA, a limited partnership is a
partnership consisting of one or more general partners, who manage the part-
nership business and are personally liable for the debts of the partnership, and
one or more limited partners, who are not involved in management and have no
liability beyond their capital contributions to the partnership. ORS 70.005(13),
(14), (15); RULPA § 101(7); I Oregon State Bar, *Advising Oregon Businesses* § 4.1
(2001). At the time of the adoption of the ULPA in 1916, the limited partnership
was the primary way to obtain limited liability outside of the corporate business
structure. Larry E. Ribstein, *Limited Partnerships Revisited*, 67 U Cin L Rev 953,
953 (1999).

[7] The provision in the ULPA for charging the interests of a limited part-
ner is similar to the UPA charging order provision. It contemplates an order
charging the limited partner's share of the limited partnership's profits and
surplus, and authorizes the court to appoint a receiver and "make all other
orders, directions and inquiries which the circumstances of the case may
require." ULPA § 22(1).

the restrictions and liabilities of a partner in a partnership without limited partners."[8]

## C.   *Enactment of the UPA and Revised UPA in Oregon*

The Oregon Legislature enacted the original UPA into Oregon law in 1939. Or Laws 1939, ch 550, §§ 1-43. In 1997, the Oregon Legislature repealed the original UPA and replaced it with NCCUSL's then most current revision of the UPA, the Revised Uniform Partnership Act (1994) ("Revised Uniform Partnership Act" or "RUPA"), with some minor revisions that are not relevant here. Or Laws 1997, ch 775, §§ 1-103. *See generally* I Oregon State Bar, *Advising Oregon Businesses* § 67 (2001) (recounting history).[9] That version of the uniform act remains in effect in Oregon and is codified at ORS Chapter 67.[10]

The resulting statute, the Oregon Uniform Partnership Act, includes a charging order provision that is similar, but not identical, to the provision in the original UPA (1914). It provides:

"(1)   On application by a judgment creditor of a partner or of a partner's transferee, a court having jurisdiction may charge the transferable interest of the judgment debtor to satisfy the judgment. The court may appoint a receiver of the share of the distributions due or to become due to the judgment debtor in respect of the partnership and make all other orders, directions, accounts and inquiries the judgment debtor might have made or that the circumstances of the case may require.

"(2)   A charging order constitutes a lien on the judgment debtor's transferable interest in the partnership. The

---

[8]   Notably, the ULPA charging order provision contains a paragraph, § 22(3), that expressly provides that "[t]he remedies conferred by paragraph (1) shall not be deemed exclusive of others which may exist."

[9]   *Thompson v. Coughlin*, 329 Or 630, 637 n 7, 997 P2d 191 (2000) cites RUPA (1996) as the source of the 1997 Oregon enactment.

[10]   NCCUSL issued a later (1997) revision, the Uniform Partnership Act (1997) (also known as "RUPA"), which is now recognized as the standard revision of the UPA. The 1997 revision contained significant modifications to the Act's charging order provision, § 504, accompanied by extensive commentary, which the companies have quoted in their brief to this court. Oregon did not enact that 1997 version of the provision (or the 1997 version of RUPA in general), so the cited commentary is not relevant to the meaning of the provision that it *did* enact.

court may order a foreclosure of the interest subject to the charging order at any time. \* \* \*

"\* \* \* \* \*

"(5)   This section provides the exclusive remedy by which a judgment creditor of a partner or partner's transferee may satisfy a judgment out of the judgment debtor's transferable interest in the partnership."

ORS 67.205 (RUPA § 504). The revised provision retains the original provision's notion of charging a judgment debtor's interest in a partnership to satisfy a judgment, but notably identifies the interest that can be charged as the partner's "transferable interest," a term that is defined elsewhere as being limited to the "partner's share of the profits and losses of the partnership and the partner's right to receive distributions." ORS 67.195 (RUPA § 502).[11] The revised charging order provision, ORS 67.205 (RUPA § 504), also retains the original provision's authorization to "make all other orders, directions, accounts and inquiries the judgment debtor might have made or that the circumstances of the case may require."

D.   *Enactment of ULPA and Revised ULPA in Oregon*

The Oregon legislature enacted the original ULPA in 1976. In 1985, the legislature replaced the original ULPA with NCCUSL's then-current revision of the uniform act,[12] the Uniform Limited Partnership Act (1976), codifying the act at ORS Chapter 70. Or Laws 1985, ch 67, §§ 1-63. In 1987, it amended ORS Chapter 70 to incorporate changes to the 1976 uniform act approved by NCCUSL in 1985 (Uniform Limited Partnership Act (1976) with 1985 Amendments)

---

[11]  The NCCUSL commentary to RUPA § 502 emphasizes that those economic rights are the only rights of a partner that are transferable: ("A partner has other interests in the partnership that may not be transferred, such as the right to participate in the management of the business."). That sentiment is also evident in RUPA § 503(3) (ORS 67.200(c)), which provides that a transfer of a partner's transferable interest in the partnership "[d]oes not, as against the other partners or the partnership, entitle the transferee \* \* \* to participate in the management or conduct of the partnership business, to require access to information concerning partnership transactions, or to inspect or copy the partnership books or records."

[12]  NCCUSL issued a later revision, the Revised Uniform Limited Partnership Act (2001) (Re-RULPA), which has not been enacted in Oregon.

(RULPA). Or Laws 1987, ch 543, §§ 1-33. *See generally*, I Oregon State Bar, *Advising Oregon Businesses* § 4(2) (2001) (recounting history). The resulting limited partnership statute, the Oregon Uniform Limited Partnership Act, ORS Chapter 70, contains a charging order provision that is similar to the provision in the original ULPA. It provides, in part, at ORS 70.295 (RULPA § 703):

> "On application to a court of competent jurisdiction by any judgment creditor of a partner, the court may charge the partnership interest of the partner with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the partnership interest."

A related provision spells out the referenced "rights of an assignee of a partnership interest":

> "*** An assignment of a partnership interest does not dissolve a limited partnership or entitle the assignee to become or to exercise any rights of a partner. An assignment entitles the assignee to receive only the distribution to which the assignor would be entitled."

ORS 70.290 (RULPA § 702). The newer charging order provision notably does not retain the wording in the original ULPA (and Oregon's earlier statute) authorizing courts to appoint a receiver and "make all other orders, directions and inquiries which the circumstances of the case may require." ULPA § 22(1). Neither does the revised act (ORS Chapter 70) retain the original act's statement that "the remedies conferred by *** this section shall not be considered exclusive of others that may exist." ULPA § 22(3).

Another significant revision to the original ULPA (and to Oregon's earlier statute) appears in a new section setting up an express linkage to the UPA. RULPA § 1105 provides: "In any case not provided for in this Act, the provisions of the Uniform Partnership Act govern." In codifying that provision of the RULPA, the Oregon Legislature substituted more general references to ORS chapters, allowing the provision to retain its relevance if and when the referenced "Act[s]" were to change (as occurred in 1997 when the Oregon Legislature replaced the UPA with the RUPA): "In any case governing limited partnerships that is not provided

for in this chapter, the provisions of ORS chapter 67 govern." ORS 70.615.

Relatedly, RUPA (1994) (ORS Chapter 67) omits its predecessor's express statement regarding its application to limited partnerships, discussed above, 362 Or at ___ (setting out and discussing UPA § 6(b)). However, as explained in the revised uniform act's prefatory note regarding the removal of the provision, the omission does not reflect an intention to delink the RUPA from the RULPA, but rather an understanding that the provision was unnecessary in light of RULPA § 1105 (ORS 70.615).

> "No substantive change in result is intended, however. Section 1105 of RULPA already provides that the UPA governs in any case not provided for in RULPA, and thus the express linkage in RUPA is unnecessary. Structurally, this is more appropriately left to RULPA to determine that applicability of RUPA to limited partnerships."

E.   *Oregon Uniform Limited Liability Company Act*

Although NCCUSL adopted a Uniform Limited Liability Company Act in 1994, Oregon did not enact that uniform act. It already had enacted its own Oregon Limited Liability Company Act (OLLCA) the preceding year. The Oregon Bar Association task force that drafted the OLLCA drew wording for the Act from other Oregon statutes, including the Oregon Uniform Limited Partnership Act (ORS Chapter 70, RULPA (1976, with 1985 amendments). Exhibit, Summary and Commentary [on] Limited Liability Act, Senate Judiciary Committee, SB 285, Feb 22, 1993.

The OLLCA (ORS Chapter 63) includes a charging provision, ORS 63.259, which provides:

> "On application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge the membership interest of the member with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the membership interest."

The "rights of an assignee of the membership interest," as used in that statute, are described in ORS 63.249(3), which provides that, unless the assignee actually becomes

a member of the limited liability company, with the consent of the other members:

> "the assignee shall have the assignor's right to receive and retain, to the extent assigned, the distributions, as and when made, and allocations of profits and losses to which the assignor would be entitled, but shall not exercise any other rights of a member, including without limitation the right to vote or otherwise participate in the management and affairs of the limited liability company."

ORS 63.259, the charging provision for limited liability companies is remarkably similar in concept and wording to ORS 70.295, the charging provision for limited partnerships. ORS 63.259 differs from ORS 70.295 only in its reference to "members" and "membership" rather than "partners" and "partnership." However, ORS 63.259 does not contain authorization, such as that found in the Oregon RUPA, to "make all other orders, directions, accounts and inquiries the judgment debtor might have made or that the circumstances of the case may require." ORS 67.205. Nor does it contain a provision like that found in the Oregon RULPA linking the two partnership acts. *See* ORS 70.615 (providing that ORS Chapter 67—the Oregon RUPA—governs in any case involving a limited partnership "not provided for" in ORS Chapter 70).

## V.   ANALYSIS

### A.   *A Court's Authority to Issue Ancillary Orders Directed to Limited Partnerships*

Having set out the necessary statutory background, we turn to the companies' first argument—that, contrary to the Court of Appeals' analysis, the applicable limited partnership statute does not authorize a trial court to include ancillary provisions in a charging order against limited partnerships like the ones at issue here. The companies' initial position, in that regard, is that the relevant charging order statute, ORS 70.295, does not allow for ancillary provisions *at all*. Although ORS 70.295 expressly authorizes courts to issue a charging order against a partner's interest in a limited partnership, it contains no express authorization, such as that included in ORS 67.205, for appointing a receiver or making "other orders."

The Court of Appeals considered and rejected that argument, explaining that the authority to issue other ancillary orders was incorporated in the provision in Oregon's RULPA because of the link provided to Oregon's RUPA. ORS 67.205, the charging order provision in Oregon's RUPA, grants authority to appoint a receiver and make "all other orders" as required. The court determined that that authority extends to charging orders issued against limited partnerships through the operation of ORS 70.615 (RULPA § 1105), which provides that the provisions of the partnership statute, ORS chapter 67, govern "in any case governing limited partnerships * * * not provided for in this chapter." *Zemp*, 276 Or App at 666-69. The Court of Appeals was persuaded by the reasoning of other courts that had considered the effect of that linkage provision in the charging order context and had concluded that, insofar as methods for enforcing a charging order are "not provided for" in RULPA's charging order provision, the charging order provision in the UPA (or RUPA), which *does* provide methods of enforcement, becomes applicable in the limited partnership context. *Id.* at 667-68 (discussing *Baybank v. Catamount Const. Inc.*, 141 NH 780, 693 A2d 1163 (1997), and citing *Madison Hills Limited Partnership II v. Madison Hills, Inc.*, 35 Conn App 81, 644 A2d 363 (1994), and other cases).

But the companies argue that it is wrong to use ORS 70.615 to import into the charging order provision of Oregon's RULPA authority from the charging order provision of Oregon's RUPA. ORS 70.615 provides that the provisions of the partnership statute govern "in any case governing limited partnerships * * * not provided for in this chapter." The companies contend that the "all other orders" wording in the original ULPA charging order provision was purposely omitted from the RULPA charging provision. Consequently, they argue, Oregon's RULPA charging order statute, ORS 70.295, represents a complete statement of what its drafters intended to provide with respect to the authority of courts to charge a judgment debtor's interest in a limited partnership. In those circumstances, the companies argue, it cannot reasonably be said that the issue of the court's authority to make ancillary orders is one that ORS Chapter 70 has "not provided for."

The success of the companies' argument depends on whether we can discern from the omission of the "other orders" provision in Oregon's RULPA a specific determination to withdraw such authority. The companies contend that we can discern that affirmative intent from the fact that, after enacting Oregon's RULPA and ORS 70.295, the legislature enacted Oregon's RUPA and ORS 67.205, which retained the express "other orders" authority contained in its predecessor. The companies' theory, it seems, is that, even if a specific purpose to withdraw "other orders" authority cannot be drawn from the simple fact that express "other orders" wording has been omitted from the provision in Oregon's RULPA, the subsequent inclusion of that wording in the revisions to the partnership charging order statute without a concomitant amendment to the limited partnership charging order statute shows that the legislature specifically intended that courts not have "other orders" authority in the limited partnership context. But the logic of that theory depends on an assumption that is unsupported and illogical—that, when the legislature enacted the Oregon RUPA and its charging order provision (ORS 67.205), it also must have been considering and interpreting the Oregon RULPA and its charging order provision (ORS 70.295), a statute that at that point was eight years old. The companies' argument does not persuade us that, when it enacted ORS 70.295 in 1987, the legislature had a specific intent to preclude courts from issuing "other orders" in aid of a charging order.

Certain commentary to the RULPA also shows that the legislature did not intend to preclude courts from including other orders in charging orders directed at limited partnerships. When, in 1985, NCCUSL promulgated RULPA, it included commentary after each section, explaining any changes from the original ULPA. The commentary that followed section 703 (Oregon's ORS 70.295) provides:

> "Section 703 is derived from Section 22 of the 1916 (UPA] but has not carried over some provisions that were thought to be superfluous. For example, references in Section 22(1) to specific remedies have been omitted, as has a prohibition in Section 22(2) against discharge of the lien with partnership property. Ordinary rules governing the remedies

available to a creditor and the fiduciary obligations of general partners will determine those matters."[13]

That commentary does not support the specific legislative intent that the companies contend for—an intent to strip courts of their prior authority to appoint receivers and issue other orders in aid of a charging order. Instead, it suggests that the provision's drafters understood that, in most jurisdictions, courts would have some similar authority to issue other orders from other sources, and thought that courts should look to those "ordinary rules governing the remedies available to a creditor," to appoint receivers and issue other orders rather than the ULPA. In Oregon, those "ordinary rules" include Oregon's RUPA and its charging order provision, ORS 67.205.[14]

As the Court of Appeals observed in its opinion, most courts seeking to apply RULPA § 703 as enacted in their jurisdiction have concluded that, because that statute does not provide for any enforcement mechanism, the enforcement mechanism provided in the charging order provision in the UPA and/or the RUPA (*i.e.*, the express grant of authority to appoint receivers and make "all other orders that the circumstances require") is imported, by operation of RULPA § 1105, into RULPA § 703. *See Zemp*, 279 Or App at 668 (discussing *Baybank*, 141 NH 780 (finding that drafters of RULPA charging provision intended that reference be made to the UPA provision for means of enforcing the creditor's rights in the charged partnership interest); and citing *Madison Hills*, 35 Conn App at 88 (holding that RULPA charging order provision imports enforcement mechanisms in UPA provision), *Lauer Const. Inc. v. Schrift*, 123 Md App 112, 716 A2d 1096 (1998) (same), and other cases). *See also Crocker Nat'l Bank v. Perroton*, 208 Cal App 3d 1, 255 Cal Rptr 794 (1989) (importing UPA's enforcement provision into analysis of RULPA charging order without discussion). The

---

[13] This court often has looked to similar commentary by the drafters of a uniform act to determine what the Oregon legislature intended when it enacted some provision of the uniform act. *See, e.g.*, *Couch Investments, LLC v. Peverieri*, 359 Or 125, 131, 371 P3d 1202 (2016) (looking to commentary to uniform act to determine legislative intent); *Datt v. Hill*, 347 Or 672, 682, 227 P3d 714 (2010) (same); *State ex rel Torres v. Mason*, 315 Or 386, 389, 848 P2d 592 (1993) (same).

[14] *Accord*, *Madison Hills*, 35 Conn App at 87-88.

Court of Appeals was persuaded by those cases that ORS 70.295 should likewise be read to incorporate the "other orders" authority provided in the charging order provision of Oregon's RUPA, ORS 67.205. We agree.

Before we turn to the companies' contention that the statutory "other orders" authority would not extend to the ancillary orders at issue in this case, we consider an additional issue that the companies have raised. They observe that, even in the absence of express exclusivity wording in RULPA § 703 and the charging order provisions in other uniform statutes, most courts that have considered the question have concluded that statutorily-provided charging order remedies are "exclusive." *See, e.g.*, *91st Street Joint Venture v. Goldstein*, 114 Md App 561, 569, 691 A2d 272 (1997) (noting general agreement that charging order is judgment creditor's exclusive method of reaching a partner's interest in a partnership and that the creditor may no longer execute directly on partnership property, and citing cases to that effect); *In re Smith*, 17 BR 541, 547 (Bkrtcy, MD Ga 1982) (listing cases that hold that charging order is exclusive remedy for creditor of a limited partner). The companies conclude from those cases that everything but the bare charging order remedy provided in ORS 70.295 is excluded, including the "remedies" that other orders issued in aid of the charging order might entail.

Even if the companies are generally correct that the charging order remedy provided in ORS Chapter 70 and other uniform acts was intended to be "exclusive," their notion of what is excluded is too broad. When the cited cases discuss exclusivity, the alternatives they identify as being excluded are traditional creditors' remedies like attachment, garnishment and levy—not ancillary orders that are designed only to assist or enforce the charging order remedy. *See, e.g.*, *Smith*, 17 BR at 547 ("the charge order is a substitute for execution, attachment, levy and sale, or garnishment," and, thus, the exclusive remedy for a judgment creditor against the debtor-partner's interest in the limited partnership); *Baum v. Baum*, 51 Cal 2d 610, 335 P2d 481 (1959) (statutory remedy of charging order replaces levies of execution as remedy for reaching partnership interests). *See also* Jay D. Adkisson, *Charging Orders: The Peculiar*

*Mechanism*, 61 S Dak L Rev 440, 466-67 (2016) (explaining, with respect to express "exclusive remedy" wording in charging order provision in the RULLCA, that "remedy" is a term of art referring to devices for enforcing judgments that are enumerated under the remedy statutes of the state, and would not preclude other legal strategies). Thus, even if the charging order remedy provided in ORS 70.295 is in some respect exclusive, that exclusivity would not affect a court's authority under "ordinary rules", including ORS 67.205, to issue ancillary orders that are not themselves traditional creditor's remedies.

Having disposed of that issue, we return to the companies' contention that the "other orders" authority set out in ORS 67.205 and incorporated into ORS 70.295 would not, in any event, extend to the kind of ancillary orders that are at issue here. In that regard, the companies argue that, when that "other orders" wording is considered in the context in which it appears, the surrounding provisions of ORS Chapter 67, the relevant case law, and the well-understood purpose of the charging order remedy in general, it becomes evident that the drafters intended to strictly limit courts to "other orders" that do not interfere with the conduct of the partnership business. Orders like those at issue that purport to prohibit certain transactions by the partnership or grant outsiders access to partnership information would fall outside of those strict limitations, the companies conclude.[15]

---

[15] The companies also argue that the existence of other statutory avenues for the kind of relief that these ancillary orders provide is further proof that such ancillary orders are not authorized by ORS 67.205(1). They point to ORCP 79, providing for temporary restraining orders and preliminary injunctions, ORCP 80 B, providing for appointment of a receiver to preserve, dispose of, or otherwise manage property that is subject to a judgment, ORCP 83, providing for provisional process, and ORS 18.268, providing for examination of a judgment debtor about property that may be applied against the judgment. The companies further point out that all of those statutory remedies expressly provide specific procedural safeguards for the parties who may become subject to them (bond requirements and protective order provisions), while ORS 67.205(1) does not. The companies conclude that the absence of any express mention of those procedural safeguards in ORS 67.205(1) shows that the legislature did not contemplate that ORS 67.205(1) would be used to obtain this kind of relief—because creditors could thereby bypass the intended safeguards.

Our answer to that argument is twofold. First, most of the cited rules are directed at prejudgment orders and would not apply in the charging order context. And second, the most reasonable takeaway from the existence of parallel statutory avenues of relief, with expressly-provided procedural safeguards, would

Our consideration of that argument begins with an examination of the relevant wording in its statutory context. After setting out the charging order remedy, Oregon's partnership charging order statute, ORS 67.205(1), provides that a court issuing a charging order may also appoint a receiver and "make all other orders, directions, accounts and inquiries the judgment debtor might have made or that the circumstances of the case may require." The words by themselves can be read as authorizing a very broad range of orders, including ones that clothe the court (and, indirectly, the judgment creditor) with the rights of the debtor-partner and ones that otherwise touch on the partnership's management, if the "circumstances of the case [so] require."

But those words must be read in the broader context in which they appear—a provision that is directed first and foremost at furnishing judgment creditors with a mechanism for satisfying their judgments out of the partnership interests of their debtors. Notably, ORS 67.205(1) identifies the interest that may be charged to satisfy the judgment as "the *transferable interest* of the judgment debtor." (Emphasis added.) The statute elsewhere defines the emphasized term in a way that underscores the limited nature of the charging remedy: ORS 67.195 provides that "[t]he *only* transferable interest of a partner in the partnership is the partner's share of the profits and losses of the partnership and the partner's right to receive distributions." (Emphasis added.) Another related statute, ORS 67.200(1)(c), although not directly applicable in the context of charging orders, adds to the understanding that the transferable rights of a partner that may be charged to satisfy a judgment are strictly limited.[16] It provides that the actual transfer of a "transferable interest" to another person

"[d]oes not, as against the other partners or the partnership, entitle the transferee, during the continuance of the partnership, to participate in the management or conduct

---

not be that ORS 67.205(1) excludes orders that grant relief of that sort, but rather that what appear to be procedural safeguards of general applicability should be included in any orders granting such relief.

[16] ORS 67.200 speaks to an *actual transfer* of a partner's transferable interest, rather than an order *charging* a partner's transferable interest to satisfy a judgment.

of the partnership business, to require access to information concerning partnership transactions, or to inspect or copy the partnership books or records."

Taken together, ORS 67.195 and ORS 67.200(1)(c) point to a general legislative understanding that outsiders (creditors and assignees) should be excluded from participating in the conduct of partnership business and accessing partnership information even if, through a charging order or outright transfer of a partnership interest, they can obtain an interest in the partnership's profits and distributions. The same legislative understanding is reflected in the limited partnership charging order statutes, insofar as they provide that a judgment creditor charging his or her debtor's interest with payment of the debt "has only the rights of an assignee of the partnership interest," ORS 70.295, *i.e.,* the right "to receive the distributions to which the assignor would be entitled," but not to "exercise any rights of a partner," ORS 70.290. As the companies observe, that notion of protecting the management of the partnership business from outside interference by creditors and assignees has long been understood as a bedrock principle underpinning the UPA and the RUPA. *See, e.g.,* William Draper Lewis, *Uniform Partnership Act*, 24 Yale L J 43, 633-34 (1915) (delineating three different partnership rights—to partnership property, to profits and surplus, and to participate in management—and noting that only interest in profits and surplus is assignable); Francis M. Burdick, *The Law of Partnership* 5.2, 270-71 (3rd ed 1917) (UPA allows partner's creditors and assignees to obtain partner's financial interest in the partnership but "deny *** the right to interfere in management or administration of the partnership *** or to require any accounts or to inspect books"). *See also* I Alan Bromberg and Larry Ribstein, *Bromberg and Ribstein on Partnership* § 3.05(c)(4) (2007-1 Supp) (the fact that a partner may transfer purely financial rights in the partnership but not the right to participate in management reflects the principle that, in the close-knit arrangement that typifies the partnership form, partners should be able to choose their associates).

ORS 67.205(1)'s grant of authority to "make all other orders, directions, accounts and inquiries the judgment

debtor might have made or that the circumstances of the case may require" must be read in the context of the noted provisions and the broader principle that they convey. It seems highly unlikely that, while so clearly excluding management rights from the partnership interests that are subject to a charging order, the drafters of RUPA § 504 and the legislature that enacted it as ORS 67.205(1) would intend to authorize a court to issue ancillary orders that effectively override that exclusion. Of course, one could argue that, as long as it is the court, and not the judgment creditor, that is interfering with management of the partnership business or "making orders, directions, accounts and inquiries the judgment debtor might have made," there is no actual conflict with the principle we have been discussing. But, given that the court's ancillary orders are made on behalf of the judgment creditor's charging efforts and generally at the judgment creditor's request, the issue cannot be that simple.

Although we have searched the charging order cases decided under the uniform acts (UPA, RUPA, ULPA, and RULPA) for confirmation of our thinking about the "all other orders" provision, we have not discovered any that are directly on point.[17] But the desire to exclude judgment creditors and assignees from management rights in a

_____

[17] The companies have recommended to our attention *Wells Fargo Bank v. Continuous Control Solutions, Inc.*, 821 NW 2d 777 (Iowa Ct App 2012), which involved an ancillary order issued in connection with a judgment creditor's charging order against an LLC, which required the LLC to provide twice yearly cash flow statements to the judgment creditor, "in order to insure compliance with th[e] charging order." As authority for including the ancillary provision, the trial court cited the charging order provision in Iowa's version of the Revised Uniform Limited Liability Company Act (RULLCA), which provides, in a variation on the wording in ORS 67.205, that a court issuing a charging order may also (a) "appoint a receiver of the distributions subject to the charging order with the power to make all inquiries the judgment debtor might have made" and (b) "make all other orders necessary to give effect to the charging order." Iowa Code § 489.503. On appeal, the Iowa Court of Appeals held that the latter "all other orders" provision "authorize[d] ancillary orders that affect only economic rights, not governance rights," and that, insofar as an order granting the judgment creditor access to the company's financial information affected the latter (governance) rights, it was not authorized. The court also was persuaded by the fact that a related provision of Iowa's RULLCA expressly provides that a transferee of a member's interest in an LLC is not entitled to access to the LLC's business and financial information: It opined that "if a transferee of a member's economic interest is not entitled to access to the LLC's records, the holder of a lien upon the member's economic interest [which is what a judgment creditor gets from a charging order] should be similarly denied access." 821 NW 2d at780.

partnership is a strong and constant theme in the cases, *see, e.g.*, *Green v. Bellerive Condominiums Ltd. Partnership*, 135 Md App 563, 763 A2d 252, 260-62 (2000), *cert den*, 534 US 824 (2001); *Wells Fargo Bank v. Continuous Control Solutions*, 821 NW 2d 777 (Iowa Ct App 2012); *Madison Hills*, 35 Conn App at 85-86, and, in that respect, the cases support our analysis.

Thus, it appears to us that the authority to issue orders "that the judgment debtor might have made" is qualified by the phrase "that the circumstances of the case may require." When we consider the statute's text, context and the case law interpreting it and identical provisions in NCCUSL's uniform acts, we conclude that such orders must be ones that allow a judgment creditor to reach a general partner's financial interest in the partnership without unduly interfering with the partnership management.[18] In other words, an "other order" may be required by the circumstances of the case when, without such an order or action, the underlying charging order would not be able to effectuate the statutory objective of allowing the judgment creditor to access a general partner's distributional interest in the company or of protecting the partnership's management from interference, or of drawing some balance between those purposes, if they cannot both be effectuated fully. "Other orders" are authorized under ORS 67.205 and ORS 70.295 only to the extent that they are "required" in that sense.[19]

---

*Wells Fargo Bank* has no clear application here. The RULLCA charging order provision, under which it was decided, grants authority to issue ancillary orders in significantly different terms than those employed in ORS 67.205(1)—notably, it separately and specifically authorizes an appointed receiver to make any inquiries the judgment debtor might have made. And, in fact, although the court in *Wells Fargo Bank* held that the court had no authority to include an ancillary order requiring the LLC to provide financial information *to the judgment creditor,* it suggested that a court-appointed receiver might have had authority to ask for that information.

[18]  In this case, because Zemp was a general partner, the court imposed orders that it determined a general partner could make. The orders that a limited partner could make may be more circumscribed.

[19]  What that standard means, as a practical matter, is that, if a court has reason to believe that the charging order by itself cannot effectively convey to the judgment creditor the debtor-partner's right to distributions and profits—as might happen, for example, if the limited partnership exists only to shelter assets from creditors and has no business that will generate distributions or profits in

## B. *A Court's Authority to Issue Ancillary Orders Directed to Limited Liability Companies*

Charging orders directed to limited liability companies are governed by ORS 63.259. As noted, that statute contains no wording that expressly authorizes courts to issue ancillary orders in connection with charging orders, and, unlike charging orders directed at limited partnerships, it provides no basis for thinking that the legislature intended that its terms be supplemented by the terms in some other statute (such as ORS 67.205) that expressly provides such authority. Accordingly, the only question with respect to charging orders directed at limited liability companies under ORS 63.259 is whether courts have authority to issue ancillary orders in aid of a charging order under some other source of law.[20]

Plaintiff has identified a number of possible sources of law as relevant. Plaintiff first asserts that courts have broad inherent authority to enforce their own orders and judgments, and that the orders at issue fall within the scope of that inherent authority. We accept the former proposition, but are less certain about the latter. It is true that courts have broad inherent powers, sometimes also recognized by statute, to do those things that are necessary to perform their judicial function, *Ortwein v. Schwab*, 262 Or 375, 385, 498 P2d 757 (1972), *aff'd*, 410 US 656 (1973), and that those powers include the power to compel obedience to a court's own orders and judgments. *State ex rel Oregon State Bar v. Lenske*, 243 Or 477, 492-93, 407 P2d 250, *cert den*, 384 US

---

the ordinary sense of the words, or has been structured in or operated in such a way as to allow money to be transferred to the debtor-partner or his or her agents through a mechanism other than formal distribution or profit sharing—the court may issue ancillary orders that will ensure that the charge on the judgment creditor's share is not evaded. And while the court would be expected craft its orders, if possible, to avoid interference in the partnership's management, there may be circumstances in which it is not possible to effectuate the goal of charging the judgment creditor's share of distributions and profits without some degree of interference in the business. As long as the order effectuates a reasonable balance between the two objectives, it would be authorized.

[20] To the extent that the companies suggest that the charging order remedy provided in ORS 63.259 is an "exclusive" remedy that precludes courts from issuing ancillary orders in aid of the charging order under other sources of law, we reject that suggestion for the same reason that we rejected it as applied to ORS 70.295.

943 (1966); ORS 1.010(4).[21] It is even true that, to the extent that courts' inherent powers are essential to the courts' work, those powers cannot be eliminated (or excluded) by legislative fiat. *See Lenske*, 243 Or at 492-93 (legislature cannot eliminate court's authority to impose sanctions for contempt). But the general power to compel obedience to a court's own existing orders (for example, through sanctions), which is the inherent power of courts that plaintiff seems to reference, is different from the power that the orders at issue here would seem to require—the power to take prospective steps to ensure the effectiveness of a lawful order. None of the cases cited by plaintiff speak to that kind of inherent authority.

But, whether or not courts have inherent authority of that kind, they appear to have been granted something akin to it by one of the statutes that plaintiff has cited. ORS 1.160 provides that, "[w]hen jurisdiction is, by the Constitution or by statute, conferred on a court * * *, all the means to carry it into effect are also given." Although ORS 1.160 primarily has been understood as authorizing courts to devise procedures to carry out a statutory charge when none have been provided by the relevant statute, it at times has been given a more substantive slant—of authorizing courts to take whatever steps are necessary to *effectively* carry out their statutory obligations. *See, e.g., Grayson v. Grayson*, 222 Or 507, 352 P2d (1960) (although neither divorce statutes nor receivership statutes provided divorce courts with authority to appoint a receiver, divorce courts had authority to do so under ORS 1.160, to make effective the express authority conferred on such courts by statute to enjoin husband and wife from encumbering or disposing of any property during pendency of proceeding); *Kelley v. Kelley*, 183 Or 169, 191 P2d 656 (1948) (although court lacked general authority to decide validity of a divorce in a foreign jurisdiction, such authority existed under ORS 1.160 to the extent that it was necessary to effectuate its statutorily-conferred authority to grant legal separations and divorces). However, to the extent that the power granted

---

[21] ORS 1.010(4) provides that every court of justice has power "to compel obedience to its judgments, orders and process, and to the orders of a judge out of court, in an action, suit or proceeding pending therein."

to courts by ORS 1.160 is "the power to make effective jurisdiction expressly conferred," *Esselstyn v. Casteel*, 205 Or 344, 354, 286 P2d 665 (1955), it necessarily is defined by the statutory or constitutional provision that confers "jurisdiction." In other words, a court's authority under ORS 1.160 is the authority to take whatever additional steps are necessary to carry out the task that the legislature assigned to the court in the underlying statute or constitutional provision.

ORS 63.259 directs a court, on application of a judgment creditor of a member of a limited liability company, to charge "the membership interest of the member" with payment of the judgment, and specifies that, "[t]o the extent so charged, the judgment creditor has only the rights of an assignee of the membership interest." The referenced "rights of an assignee of [a] membership interest" are described in ORS 63.249(3). Under that provision, unless the assignee of the membership interest becomes a member of the limited liability company (which generally requires the consent of the majority of the members):

> "the assignee shall have the assignor's right to receive and retain, to the extent assigned, the distributions, as and when made, and allocations of profits and losses to which the assignor would be entitled, *but shall not exercise any other rights of a member, including without limitation the right to vote or otherwise participate in the management and affairs of the limited liability company.*"

Considered in the context of ORS 63.249(3), ORS 63.259 directs courts to issue charging orders that accomplish two objectives—giving the judgment creditor of a member of a limited liability company access to the debtor-member's interest in the limited liability company's profits and distributions to satisfy his or her judgment, but, at the same time, excluding the judgment creditor from other rights of the member, including management rights. Those two objectives—and the further objective of striking a balance between them to the extent they are opposed—are at the heart of the charging order remedy, and are found in virtually every charging order statute, whether for general partnerships, limited partnerships or limited liability companies. As several students of the charging order remedy have explained, the evident concern with preventing the transfer

of management authority in all these statutes reflects the peculiar interests at play in the small, unincorporated business entities for which the charging order remedy was designed. In those entities—partnerships, limited partnerships, limited liability companies and a few others—a small number of owners invest in a business venture and agree to rely on each other, rather than on third parties (usually professionals), to manage the business's operations. For such entities, allowing a stranger to intrude into the business's operations and management is particularly problematic, undermining both the entity's foundational agreement and the principle that members of such organizations should be able to pick their own partners. *See* Chad J. Pomeroy, *Think Twice: Charging Orders and Creditor Property Rights*, 102 Ky LJ 705, 715-17 (2013); Adkinson, 61 S Dak L Rev at 449-50. The charging order mechanism, as provided in ORS 63.259 and in other similar statutes, seeks to balance that "pick your partner" principle against the judgment creditor's interest in reaching the debtor's assets by directing courts to charge the debtor-member's share of distributions and profits to satisfy the creditor's judgment while excluding the judgment creditor from participating in management. Pomeroy, 102 Ky LJ at 716.

Thus, as applied to ORS 63.259, the general authority of courts under ORS 1.160 to employ "all the means" necessary to carry their statutory jurisdiction into effect is circumscribed by the obligations imposed on the court by that statute to convey the debtor-member's right to the company's distributions and profits to the judgment creditor, to refrain from conveying the debtor-member's rights in the company's management, and, presumably, if those two obligations cannot both be perfectly served, to find some balance between them. An ancillary order is authorized by ORS 1.160, in this context, if it is needed to effectuate those objectives. Notably, that is the same standard that would apply under the "other orders" wording of ORS 67.205, as incorporated into ORS 70.295.

C.   *The Standard's Application to the Ancillary Orders at Issue*

Thus far, we have considered the authority of courts to issue ancillary orders in aid of a charging order to enforce

a judgment against a general partner in a limited partnership or a member of a limited liability company entirely in the abstract. With respect to limited partnerships, we have concluded that the authority to issue "other orders" set out in ORS 67.205 is incorporated into ORS 70.295. With respect to limited liability companies, we have concluded that the authority to issue ancillary orders derives from ORS 1.160. For both types of entities, the court's authority to issue other orders in aid of a charging order are subject to the same standard—whether the order is necessary to effectuate the court's obligation to allow the judgment creditor access the debtor's distributional interest to satisfy his or her judgment, without unduly interfering with the entity's management.

Our conclusions about the scope of a court's authority to make other orders in aid of a charging order issued under ORS 70.295 and ORS 63.259 have obvious implications for orders like those that are at issue, which preclude a limited partnership or limited liability company from engaging in certain kinds of transactions[22] or require a limited partnership or a limited liability company to provide details about their business and finances to the judgment creditor. But they do not provide a direct and immediate answer about the *particular* orders that are before us. On the one hand, we can imagine circumstances in which a carefully cabined order requiring a partnership or limited liability company to provide financial information or refrain from particular transactions would be truly necessary to make the charge against the debtor-partner's or debtor-member's distributional interest in the entity effective—so much so that any effect on the entity's management would be seen as incidental. On the other hand, in less compelling circumstances, an order of that sort—particularly if it is more broadly worded and appears to make the partnership accountable to the

---

[22] The provisions in the charging order that precluded the LPs and LLC from engaging in certain transactions are particularly significant because they purport to control all transactions of a certain type *by the entire LP or LLC*. While plaintiff correctly observes that charging orders often include ancillary orders that "command that the debtor-member not take any loans, salary, fees, etc., or any other actions that would get money out of the LLC through the backdoor," Adkisson, 61 S Dak L Rev at 452, those typical orders are different in that they are directed solely at the debtor-member or debtor-partner and transactions that might amount to distributions to the debtor-member or debtor partner.

creditor, rather than the court—might be viewed as primarily working to transfer fundamental management rights of a debtor partner to the creditor, and properly disapproved on that ground. In the end, the trial court will have to carefully consider the judgment creditor's particular request and all of the surrounding circumstances to determine which side of the line the contemplated order falls on—and, thus, whether it is authorized either under the standard that we have announced.

     With those conclusions in mind, we turn to the charging order in this case, which included ancillary provisions requiring both the LPs and the LLC to refrain from making any sort of loan to anyone, to refrain from selling, encumbering or otherwise modifying any partnership interest without permission from plaintiff or the court, to provide plaintiff with extensive information about the companies' structure and past finances, and to provide periodic updates regarding their internal finances until plaintiff's judgment should be satisfied in full. All of those provisions would seem to touch on matters of company management and therefore could only be properly included in the charging order if they were found to be necessary to the charging order's effectiveness under the standard that we have discussed. Although we cannot say with certainty that the trial court did *not* consider the requested orders and the surrounding circumstances in the light of that standard, we *can* say that there was no evidence before the court that would have supported a determination that the orders were authorized under the standard.  A broad range of evidence might have been relevant to that determination, including information about the structure of the companies and the interests of and relationships between Zemp partners and members, information about any past efforts to collect the judgment from Zemp, evidence supporting plaintiff's assertion that Zemp was using the companies as a device for protecting his assets from creditors and not for any recognizable business or commercial purpose, and information showing that Zemp had failed to respond fully and truthfully to a debtor's examination under ORS 18.265. The only actual evidence before the court when it made its decision was evidence that Zemp was a general partner of the four limited partnerships and the

manager of the limited liability company. The court could not determine, on the basis of that evidence alone, that the ancillary orders were so crucial to the effectiveness of the remedy that the court sought to provide (*i.e.*, access to the debtor-partner's or debtor-member's distributional interest in the partnership or limited liability company) and their effect on the companies' management was so that incidental that, on balance, the orders were justified. It follows that none of the challenged ancillary orders were authorized. The trial court erred in refusing to strike them from the charging order, as the companies had requested. The Court of Appeals erred to the extent that it held that two of the four challenged provisions in fact were authorized.[23]

D.   *Other Issues*

Plaintiff raises an additional objection to the Court of Appeals' decision that we think merits discussion only to confront a potential argument that the present opinion is susceptible to the same objection. As recounted above, the Court of Appeals initially held that, while trial courts have general authority under the limited partnership statute to impose orders like those that were (and are) at issue, the trial court here "had acted outside its discretion in imposing the restriction on loans, and the restriction on partners' ability to encumber or transfer their partnership interests." *Zemp*, 276 Or App at 666. The court added that its conclusion that those restrictions were outside the scope of the court's discretion "does not preclude the trial court from reimposing those restrictions against the limited partnerships on remand if [plaintiff] demonstrates that such restrictions 'may be required' to ensure that the limited partnerships comply with the charging order." *Id.* at 666 n 5. In its opinion on reconsideration, the court clarified that, although it had used the word "discretion" in its holding, its actual

---

[23] Given that we have concluded that none of the challenged ancillary provisions were authorized, at least on this record, there is no need to consider the companies' alternative argument that the challenged orders violated the Oregon Rules of Civil Procedure and the Due Process Clause of the Fourteenth Amendment to the United States Constitution (the Court of Appeals declined to consider that argument, concluding that it was unpreserved, but the companies take issue with that conclusion). If plaintiff should seek inclusion of the same or similar ancillary provisions on remand or in a new charging order, the companies may raise the issue at that time.

conclusion was that the trial court had "legally erred by imposing the provision in a manner that did not comport with the statute," because the record did not demonstrate that the trial court had made a predicate determination that the provisions were required under the circumstances of the case. *Zemp*, 279 Or App at 809.

Plaintiff argues that the Court of Appeals' "abuse of discretion" holding and its subsequent "legal error" explanation did not correspond to any claim of error that the companies had raised in their appeal—and that, consequently, the Court of Appeals should not have granted the requested relief. Plaintiff asserts that the companies' *only* argument on appeal was that a charging order, as provided in either ORS 70.295 or ORS 63.259, is the judgment creditor's exclusive remedy against the member/partner's interest in the partnership or LLC, and that ancillary orders are not allowed under either of those statutes. Plaintiff adds that, because the companies never assigned error to the trial court's exercise of discretion to issue orders of this sort, or to its failure to make a predicate determination on the record that the provisions were required under the circumstances, the Court of Appeals should not have used those errors as a basis for granting relief.

Plaintiff's ultimate point—that appellate courts are limited to considering the errors that are assigned by the appellant—is a valid one. ORAP 5.45(1). However, in our view, the issue whether the trial court correctly refused to strike the challenged ancillary provisions is sufficiently preserved. As noted, the companies assigned error to the trial court's refusal to strike paragraphs 3, 5, 6, and 7 from the charging order. They argued that the relevant charging order statutes, ORS 70.295 and ORS 63.259, do not provide for ancillary orders to aid in the charging order's enforcement, and that, insofar as the statutes set out the judgment creditor's exclusive remedy against the judgment debtor's interest in a partnership or limited liability company, no ancillary orders are allowed. In response to that argument, plaintiff contended that other sources of law permit the ancillary orders. It therefore was incumbent on this court to determine the extent of the authority granted by those specific statues that the companies cited or other sources of

law. Although the companies did not raise any issue in this court or in the Court of Appeals about the propriety of the orders under the standard that we set out in this opinion, our rejection of the orders for failure to meet the standard relates back in a clear line to the statutory analysis that the companies offered as a basis for their assignments of error. Our decision that the orders should have been stricken is responsive to the companies' broad assignments of error, and the analysis that led to that decision involved consideration of matters that were inherent in the companies' original analysis and argument. Moreover, regardless of the proceedings in the Court of Appeals, plaintiff had a fair opportunity in *this* court to marshal its arguments as to the meaning and effect of the statutes.

Our decision that the trial court should have stricken the ancillary orders at issue does not necessarily mark the end of the road for plaintiff. On remand, plaintiff should be given the opportunity to offer evidence that meets the standard that we have announced for including such ancillary orders in a charging order. Alternatively, plaintiff may propose a new charging order with different ancillary requirements, and supporting evidence, that may more easily meet our standard.

## VI.   CONCLUSION

The decision of the Court of Appeals is reversed. The order of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.